J-A05034-17

2017 PA Super 143

| | |
|---|---|
| IN RE: ADOPTION OF: A.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.C. | No. 1567 WDA 2016 |

Appeal from the Order Entered September 14, 2016
In the Court of Common Pleas of Beaver County
Orphans' Court at No(s): 3034-2015

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MOULTON, J.

OPINION BY MOULTON, J.:                    **FILED MAY 12, 2017**

A.C. ("Child") appeals, through her guardian *ad litem*, from the order entered September 14, 2016 in the Beaver County Court of Common Pleas, which denied the petition of Beaver County Children and Youth Services ("CYS") to terminate the parental rights of C.W. ("Father") to Child.  We affirm.

The trial court set forth the factual and procedural background of this case as follows:

> At birth [in July 2014], [Child] tested positive for drugs (amphetamines and marijuana), due to Mother's drug use. When she was released from the hospital, five days after her birth, [Child] initially was voluntarily placed with her [M]other's cousin, [J.B. ("Foster Mother")], who is the current foster mother.  The goal at that time was reunification with parents.  [Father] is not listed on the birth certificate and did not sign an acknowledgement of paternity, nor did he submit to genetic testing.  When he

failed to attend a Domestic Relations matter, he was adjudicated [Child]'s father.

[Child] was adjudicated dependent on September 29, 2014. Neither parent attended the hearing. Father was released from jail on September 24, 2014. It is unclear whether Father received notice of the adjudication proceeding.

From September 24, 2014 through December 1, 2014, 30 visits with [Child] were offered to Mother and Father. Father attended 4, and he left early on 2 of those occasions. There is some confusion about whether visits were offered to Father at this time due to the allegations of another person being [Child]'s father. Ultimately, DNA tests revealed the other person was not [Child]'s father.

Father was incarcerated again from December 1, 2014 through March 2016. Visits occurred at the Beaver County Jail one time every other week for one hour. Father had limited access to mail while incarcerated. He sent two letters to CYS, and he never indicated that he wanted to give up his rights as [Child]'s Father.

CYS filed a Petition to Terminate Parental Rights on September 11, 2015. The hearing initially set to terminate the rights of both parents was originally scheduled for November 24, 2015. Mother failed to attend this hearing and her rights were terminated.

The hearing to terminate Father's parental rights was continued several times, pending the outcome of his criminal trial, which also kept getting continued.

In March 2016, counsel for Father sought to dismiss the Petition to Terminate Parental Rights, because it failed to comply with the Pennsylvania Adoption Act, 23 Pa.C.S. §2512(b), which states that the petition shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights. CYS filed a new petition to terminate on April 18, 2016, seeking termination on the grounds specified in 23 Pa.C.S. §2511(a)(1) and (2).

. . .

Also in March 2016, Father was acquitted of the criminal charges for which he had been incarcerated since December 1, 2014. If he had been convicted of those charges, he could have faced a lengthy prison term, and we would be looking at a much different scenario for this child's future. Since he was acquitted of the charges, Father resumed visits with [Child]. He missed of few of these visits due to transportation issues.

The hearing to terminate his parental rights was scheduled for June 21, 2016, but was continued until June 28, 2016. Testimony regarding the psychological bonding assessment was not available at this hearing, so the court kept the record open to allow for the completion of the bonding assessment, and resumed testimony on August 24, 2016.

The bonding assessment indicated that [Child] is well bonded with her [F]oster [M]other. It also showed that a bond is forming with Father. The evaluator did not have an issue with the bond between Father and [Child], but was more concerned with Father's criminal history and pending charges. The evaluator commented, "It may indeed be that [F]ather's pattern of criminal involvement may be an overwhelming impediment in his ability to establish a bond and indeed be an effective parent going forward. Here it appears that parental fitness (due to a pattern of criminal behavior) is a much larger consideration than the bonding profile." (Chambers Report p. 8).

Since his release from jail, Father has complied with all of the CYS directives in the family service plan. He obtained a drug and alcohol evaluation, which indicated that no treatment was necessary. He obtained a parenting evaluation, which recommended no additional services. He attended the bonding assessment. He obtained adequate housing with his [m]other and his other children.

[Child] has been in placement for 22 of the last 24 months. In her entire life, the only time she was not in placement was during her initial hospital stay at birth. For the majority of this time, Father was in jail awaiting trial on charges, for which he was ultimately found not guilty. [Child] has never spent the night at Father's home. She

has a brother in her foster home, with whom she shares a strong bond.

Father is still awaiting a hearing on criminal charges in Allegheny County that stem from separate incidents that occurred on March 7, 2014 and March 19, 2014. At the hearing in this matter, those charges were awaiting a jury trial to be held in September 2016.[1]

> [1] The criminal docket indicates that on September 13, 2016, the charges are now awaiting a non-jury trial. No date for the trial was provided.

Father has three other children who reside with him and his mother. He shares custody of two of them with his mother, and his mother has played a significant role in raising them. All of the children are well provided for and do well in the community. Father does not want [Child] to think that he gave up on her. He cares for her and loves her, just as he loves his other children.

Trial Ct. Op., 9/1/16, at 1-4.

On September 14, 2016, the trial court denied the petition to terminate Father's parental rights. On October 14, 2016, Child's guardian *ad litem* filed an appeal on Child's behalf.

Child raises three issues on appeal:

1. Whether the trial court erred as a matter of law and abused its discretion in failing to terminate the parental rights of [F]ather under 23 Pa.C.S. § 2511(a)(1) after determining that CYS failed to meet its burden when [F]ather was incarcerated for ten months prior to the filing of the petition for termination and failed to address whether Father exhibited reasonable firmness in maintaining his relationship with the minor child and used all available resources to preserve the parental relationship?

2. Whether the trial court erred and abused its discretion in failing to terminate the parental rights of Father under 23 Pa.C.S. § 2511(a)(2) after finding

- 4 -

that Father was facing additional felony criminal charges and possible future incarceration?

3. Whether the trial court erred and abused its discretion in failing to find that the needs and welfare of the minor child would best be served by the termination of parental rights in light of the evidence regarding the parent child bond and the detrimental effect of severing the bond between the minor child and the foster mother on the minor child[?]

Child's Br. at 3-4. CYS has also filed a brief that supports Child's position.

We consider Child's issues mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted); *see also In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) ("[E]ven where the facts could support an opposite result, as is often the case in . . . termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment").

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). The petitioner must "prove by clear and convincing evidence that [the] asserted [statutory] grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009).

In her first issue, Child advances two arguments that the trial court erred in finding termination inappropriate under section 2511(a)(1). First, Child contends that the trial court erred in finding that CYS failed to meet its burden of proof where Father was incarcerated for ten months prior to the filing of CYS's petition. Second, Child asserts that the trial court erred in failing to address whether Father exhibited reasonable firmness in maintaining his relationship with Child, using all available resources to preserve his parental relationship.

Section 2511(a)(1) of the Adoption Act provides:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). "A court may terminate parental rights under section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child **or** fails to perform parental duties for at least the six months prior to the filing of the termination petition." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010) (emphasis in original). The court should consider the entire background of the case and not simply:

> mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his . . . parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*Id.* (quoting *In re B., N.M.,* 856 A.2d 847, 855 (Pa.Super. 2004)). However, "[w]ith respect to any petition filed pursuant to subsection (a)(1), . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of petition." 23 Pa.C.S. § 2511(b); *see In re D.W.*, 856 A.2d 1231, 1235 (Pa.Super. 2004) (holding that the post-petition evidentiary restriction "applies to the entire termination analysis").[1]

_____

[1] In its opinion, the trial court considered evidence beyond the original petition filing date of September 2015. However, we find no abuse of discretion because CYS filed an amended petition in April 2016 that set forth
*(Footnote Continued Next Page)*

In terms of parental duty, we are reminded that:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

_(Footnote Continued)_ ─────────────

the grounds for, and facts supporting, termination of Father's parental rights. **See** Am. Pet. to Term. Parental Rights, 4/18/16. Further, the bulk of the post-petition evidence concerned Father's ongoing visits with Child, which is evidence of continuing conduct that was initiated before the filing of the original petition.

**B., N.M.**, 856 A.2d at 855 (internal citations and quotation marks omitted).

Our Supreme Court has provided guidance regarding the interaction between incarceration and termination pursuant to section 2511(a)(1):

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness "in declining to yield to obstacles," his other rights may be forfeited.

**In re Adoption of McCray**, 331 A.2d 652, 655 (Pa. 1975) (internal citation and footnotes omitted).

The trial court found that while Father "did very little to be active" in Child's life from the time of Child's "birth in August 2014 until [Father] was incarcerated in December 2014," Father made a materially greater effort to remain in Child's life thereafter. Trial Ct. Op., 9/14/16, at 6. The trial court explained:

> Once he was incarcerated, Father maintained regular biweekly visits with [Child]. He claims he was not initially offered these visits at the jail by CYS, but that he had to request them, and that they started as a result of his efforts. Father requested to have visits increased at the jail, but the request was denied. The court did not want to set precedent to allow weekly visits for some inmates, but bi-weekly visits for others, especially given Father's lack of involvement prior to incarceration
>
> . . .

- 9 -

> Father maintained contact and visits with [Child] throughout his incarceration. He sent letters to her caretakers and requested photographs.
>
> Since his release from jail, Father has complied with all of the CYS directives in the family service plan. He obtained a drug and alcohol evaluation, which indicated no further treatment was necessary. He obtained a parenting evaluation, which recommended no additional services. He attended the bonding assessment. He obtained adequate housing with his Mother and his other children. He is in the process of reinstating his driver's license.
>
> He visits regularly with [Child], who calls him "daddy," and the visits go well.

*Id.* at 6-8.

Based on the foregoing findings, which are fully supported by the record, the trial court concluded:

> Given the totality of the circumstances in this case, we do not believe that CYS has demonstrated by clear and convincing evidence, that Father's rights should be terminated under section (a)(1). To terminate [under] that section, CYS must show that the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties. We do not believe this standard has been met at this time.

*Id.* at 8.

The record supports the trial court's conclusion. While CYS and Child note that Father attended only 4 of 30 offered visits before his incarceration, it is unclear whether Father was informed of the visits that occurred between September 2014 and November 2014. During that time, the visits were only offered through Mother, with whom Father did not have a relationship. Despite Father's admittedly minimal involvement in the first four months of

Child's life, the record supports the trial court's findings that Father was significantly more involved thereafter, and that Father "complied with all of the CYS directives in the family service plan." *Id.* at 7-8. We agree with the trial court that this situation is "quite different" from the factual scenario in *McCray*, where the prisoner "did not take advantage of his visitation rights or his personal counselor nor did he make sincere or persistent efforts to locate or inquire about his daughter." *Id.* at 7 (citing *McCray*, 331 A.2d at 655). Contrary to CYS and Child's arguments, the trial court considered Father's incarceration as well as his efforts to maintain a relationship with Child. Under these circumstances, we discern no abuse of discretion by the trial court and defer to its findings of fact and conclusions of law.

Next, Child argues that the trial court erred in declining to terminate Father's parental rights under section 2511(a)(2), which provides:

> **(a)** **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2). To terminate parental rights under section 2511(a)(2), the moving party must produce clear and convincing evidence of the following elements: "(1) repeated and continued incapacity, abuse,

neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003).

Child and CYS argue that the trial court erred in failing to consider the ramifications of Father's pending criminal charges in Allegheny and Beaver Counties. According to Child, "Father has been incarcerated during much of the [C]hild's life" and if he is convicted and sentenced on the pending criminal charges, he would once again be "incapable of performing his parental duties." Child's Br. at 24. CYS echoes this sentiment, noting that "[a] conviction in one or both of th[o]se cases would most certain[l]y result in additional jail time, especially in light of his criminal history," and that "Father's failure to avoid criminal activity has rendered him incapable of caring for [Child] throughout a large portion of . . . [C]hild's life and most certainly, if he is convicted again, Father will once again, be unavailable." CYS's Br. at 14-15.[2]

Both Child and CYS appear to argue that Father's potential future incarceration on pending charges creates, within the meaning of section

---

[2] It bears noting that Father's incarceration between December 2014 and March 2016 was not based on a criminal conviction and sentence. Rather, Father was detained pre-trial on charges for which he was ultimately acquitted.

2511(a)(2), an "incapacity" that "cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2). Although the Pennsylvania Supreme Court has discussed the effect of incarceration on the termination analysis under section 2511(a)(1), *see McCray*, 331 A.2d at 655-56, and section 2511(a)(2), *see S.P.*, 47 A.3d at 827-31, Pennsylvania appellate courts have provided little guidance on whether and how trial courts should consider the effect of possible incarceration based on criminal charges pending at the time the termination petition is filed.

The Pennsylvania Supreme Court has instructed that incarceration,

> while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 [Pa.C.S.] § 2511(a)(2). *See* [*In re: E.A.P.*, 944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*S.P.*, 47 A.3d at 830 (some internal citations omitted).[3] Accordingly, courts properly consider the incapacitating effect of a parent's incarceration and

---

[3] Further, the Supreme Court stated:

> If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in

*(Footnote Continued Next Page)*

- 13 -

whether the duration of that incarceration would prevent a parent from remedying the incapacity. *See id.*; *see also In re D.C.D.*, 105 A.3d 662, 677 (Pa. 2014) (holding that trial court properly concluded that father's incarceration rendered him "incapable of providing care for his child and that [his] incapacity will exist at least until [f]ather's minimum release date [four years later], when [c]hild will be seven").

While the record shows that Father had been incarcerated on prior occasions, Father was **not** incarcerated when CYS filed the amended petition to terminate his parental rights or when the trial court denied that petition. Father was released from custody in March 2016 after a jury acquitted him of the charges for which he had been detained. He remained out of custody despite the pending criminal charges in Allegheny and Beaver Counties. Thus, unlike the mother in *S.P.*, Father remedied his incapacity through his release from jail.

---

*(Footnote Continued)* ————————

> the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*S.P.*, 47 A.3d at 830-31.

Child and CYS contend that the trial court erred by not considering Father's pending criminal charges and any possible incarceration that could result from conviction on those charges. We disagree.

First, courts should be extremely cautious before employing speculation about the outcome of pending charges when analyzing a petition for termination under section 2511(a)(2). As Father's earlier acquittal demonstrates, a criminal charge does not inevitably lead to a conviction and extended incapacity. Moreover, the mere existence of pending charges, without more, is unlikely to meet the "clear and convincing" standard set forth in section 2511.[4] Before terminating a parent's rights, the trial court must receive testimony "that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

Second, the trial court was aware of and did consider Father's pending charges and the possibility of his future incapacity. After noting that Father was "exonerated of the [earlier] charges," "has housing," "does not require

---

[4] This is not to say that pending criminal charges are irrelevant in determining an individual's capacity to parent or remedy an existing incapacity. However, pending criminal charges alone, without any further evidence of a parent's incapacity or inability to remedy said incapacity, are insufficient to support a finding that a parent has an irremediable incapacity that warrants termination of his or her parental rights under section 2511(a)(2).

further parenting skills," and "has applied for a job with his union," the court properly concluded: "If Father is convicted on those charges, and has to spend time in jail, then CYS may be able to show that the incapacity will not be remedied by the parent and termination may be appropriate at that time." Trial Ct. Op. at 9. A final disposition of Father's pending criminal charges would allow CYS to determine whether another petition is appropriate and, if so, allow CYS to present a full set of facts to the court for disposition of a new termination petition. Accordingly, we conclude that the trial court did not abuse its discretion by declining to terminate Father's parental rights based on the pending criminal charges.

Finally, Child and CYS argue that the trial court erred in failing to address evidence presented as to the parent-child bond and the detrimental effect of severing the bond between Child and Foster Mother. The trial court declined to analyze the bond between Child and either Father or Foster Mother because it had concluded that grounds for termination did not exist under section 2511(a). Trial Ct. Op. at 9.

We agree with the trial court's analysis. A trial court only "engage[s] in the second part of the analysis pursuant to Section 2511(b) . . . if the court determines that the parent's conduct warrants termination of his or her parental rights." **In re L.M.**, 923 A.2d 505, 511 (Pa.Super. 2007). Because the trial court found that grounds for termination did not exist, it appropriately denied CYS's petition without considering the bond between Father and Child.

- 16 -

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/12/2017