J-S46031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.V. A/K/A Z.M.V-G., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.G., MOTHER | : : : : : : | |
| | : | No. 695 EDA 2018 |

Appeal from the Decree February 1, 2018,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0001019-2017,
CP-51-DP-0002120-2012.

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.B., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.G., MOTHER | : : : : : | |
| | : | No. 696 EDA 2018 |

Appeal from the Decree February 1, 2018,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0001020-2017,
CP-51-DP-0002522-2015.

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED OCTOBER 02, 2018**

In these consolidated matters, Appellant S.G. ("Mother") appeals the involuntary termination of her parental rights to children Z.B (age 4) and Z.V. (age 6).[1]  After careful review, we affirm.

---

[1] The court also terminated the rights of the father, P.T.-B.., who does not appeal.

The Philadelphia Department of Human Services ("DHS") became involved with the family in September 2015 when Mother was arrested for shoplifting; DHS obtained an order for protective custody to ensure their safety. The court placed children in foster care. On September 22, 2015, the trial court adjudicated the children dependent.

In December 2015, DHS created a "Single Case Plan" to facilitate the reunification of the children with Mother. The Single Case Plan was revised several times during the dependency case; however, the plan's objectives were almost entirely the same throughout. These primary objectives included: participate in dual-diagnosis services; engage in parenting and domestic violence services; obtain appropriate identification; maintain consistent visitation with the children. *See* Notes of Testimony, 2/1/2018 ("N.T."), at 7-8.

The DHS caseworker testified that Mother struggled to comply with each of these goals. Meanwhile, in April 2017, the court placed the children in the pre-adoptive foster home of their paternal great grandmother. *Id.*, at 6.

In October 2017, DHS filed termination petitions. At the hearing, on December 14, 2017, it appeared Mother might voluntarily relinquish her parental rights. The trial court heard testimony and accepted DHS Exhibits 1 thru 15. The court ordered Mother, if she voluntarily chose to relinquish her rights, to submit the appropriate paperwork by December 28, 2017. For whatever reason, this did not happen. Therefore, the court scheduled a contested hearing for February 1, 2018. This hearing was an abbreviated one;

DHS only had to address the second prong of the termination analysis under § 2511(b), because the evidence from the prior court date already dealt with the first prong of the termination analysis under § 2511(a). Despite receiving notice, Mother did not appear at this second date.[2] Mother's counsel did appear; and during the ensuing termination hearing, her counsel did not object to the admission of DHS' exhibits or cross-examine the only witness. At the conclusion of this hearing, the court terminated Mother's rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and § 2511(b). Mother presents to us this appeal.

Mother raises two issues:

> 1. Did [DHS] sustain the burden that Mother's rights should be terminated when there was evidence that Mother had completed and/or had been actively completing her permanency goals?

> 2. Was there sufficient evidence presented to establish that it was in the best interest of the children to terminate Mother's parental rights?

Mother's brief, at 10.

We observe our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only

---

[2] Mother's absence was gleaned from the Appellee's brief, as it was not clearly noted on the record. *See* Appellee's Brief, at 7.

upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017)(citing *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013)).

Section 2511 of the Adoption Act governs the involuntary termination of parental rights; termination requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*Id.* (Citing *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007)).

In her first argument, Mother essentially challenges the sufficiency of the evidence to terminate under § 2511(a). Specifically, Mother argues that there was evidence that she was actively completing her permanency goals. *See* Mother's Brief, at 10. However, at the termination hearing, Mother's counsel (operating in her absence) did not contest any of DHS' exhibits or the DHS caseworker's testimony establishing the grounds for termination under this portion of the statute. Instead, DHS' evidence that Mother did not comply with the case plan goals was uncontested:

- 4 -

ASSISTANT SOLICITOR: In terms of the parents it looks like from the last hearing we put in DHS 1 through 15 as evidence, but just to briefly summarize for the record, is it fair to say that neither of the parents completed their single case plan goals in total as of today.

WITNESS: Yes.

ASSISTANT SOLICITOR: And some of the primary goals for mother would have been dual diagnosis services, ARC services, to include parenting, housing, domestic violence counseling, obtaining appropriate identification as well as consistent visits?

WITNESS: Yes.

ASSISTANT SOLICITOR: And she struggled with complying each of those, is that fair to say?

WITNESS: Yes.

ASSISTANT SOLICITOR: And no successful certificates were provided to your agency?

WITNESS: No.

[…]

ASSISTANT SOLICITOR: So, Your Honor, I would just move to incorporate the prior exhibits that were introduced at the last listing. I believe we had the same stipulation as to the statement of facts and with the conclusion of that evidence I would rest and offer for cross.

[…]

MOTHER'S COUNSEL: No questions.

N.T., at 7-9.

Although Mother's counsel did not stipulate to the statement of facts, the transcript indicates counsel did not object either. The GAL, Father's counsel, and the Child Advocate all agreed to the stipulation in order. Mother's counsel was silent. *Id.*, at 5. Then the hearing proceeded with DHS' direct

examination of the caseworker. Elsewhere in the transcript, both the assistant solicitor and the court noted that the facts had been stipulated. *See id.*, at 9. When this happened, Mother's counsel did not object or otherwise correct their assumption.

Even if Mother did not stipulate to the facts, she did not engage in any cross-examination, nor did she otherwise present a case challenging the evidence or testimony. Consequently, the trial court was left with uncontroverted evidence establishing that grounds under each §§ 2511(a)(1), (2), (5), and (8) existed.

Mother further contends that the sheer number of Single Case Plan Objectives that [she] was expected to complete was "overwhelming and insurmountable." Mother's Brief, at 18. She further alleges that the objectives were frequently revised. *Id.*, at 17. Mother also alleges that they were too vague and "not concrete or definable." *Id.*, at 18. While it does appear that DHS regularly revised some objectives, the core of the reunification plan remained the same throughout the dependency case. Moreover, the only potentially ambiguous objective from Mother's proffered litany is her objective that she "understand her role as protection and provider." *Id.*, at 17. But clearly the failure to meet this goal played no role in the court's decision to terminate her parental rights.

Had the record been replete with battles over comprehension of the reunification plan and substantial compliance of the same, we might have pause. Here, however, the *only* evidence of record is that Mother completed

*none* of the primary goals, e.g.: consistent visitation; drug and alcohol screening; and parenting. ***See*** N.T., at 7-9. The court did not abuse its discretion when finding that DHS met its evidentiary burden under § 2511(a).

Having determined that the trial court made no error as to § 2511(a), we now address the second part of two-prong termination analysis and Mother's second issue on appeal. Similar to her first issue, Mother also challenges the sufficiency of the evidence, but this time under § 2511(b).[3] ***See*** Mother's Brief, at 10; 18.

Here, too, we observe Mother's counsel did not cross-examine the witness or otherwise present a case regarding this second prong of the termination analysis. The DHS caseworker testified that there was no bond between the children and Mother, likely due to the fact that Mother did not consistently visit the children. The DHS caseworker testified that termination of Mother's rights would not harm either child. ***Id.*** The children do not look to Mother to meet their day-to-day basic needs. ***Id.*** The children are doing well in their pre-adoptive, kinship placement with the paternal great-grandmother. ***Id.*** The DHS caseworker testified that the children are bonded with the paternal great-grandmother. ***Id.***, at 6-7. The paternal great-grandmother meets the children's needs. ***Id.*** No one challenged this testimony. ***Id.***, at 9.

---

[3] While Mother references the child's "best interest" in her second Statement of Error, she briefs the issue as a § 2511(b) matter under a heading that alludes to the child's "needs and welfare."

Despite the brevity of the termination hearing, DHS put forth uncontested testimony and evidence that the grounds for termination have been established under § 2511(a), and that termination would best serve the children's needs and welfare under § 2511(b). Despite having notice, Mother did not attend the hearing. Thus, although her counsel did not actively object, cross-examine, or offer contradictory evidence in this case, Mother gave her counsel little, if anything, to work with in opposing the termination of her parental rights. As such, the trial court's decision to grant the termination petition was not an abuse of discretion.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/18