J-S54041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.L.A., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LUZERNE COUNTY CHILDREN & YOUTH SERVICES | : : : : : : | |
| | : | No. 734 MDA 2019 |

Appeal from the Decree Entered April 2, 2019
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-8640

BEFORE:  BOWES, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:               **FILED NOVEMBER 04, 2019**

Appellant, Luzerne County Children and Youth Services ("CYS"), appeals from the April 2, 2019 Decree that denied CYS' Petition to Involuntarily Terminate the Parental Rights of K.O. ("Mother").  Upon careful review, we affirm.

The relevant factual and procedural history is as follows.  Mother is the biological parent of K.A. ("Child"), who was born in January 2017.  Child was born at 31 weeks gestation, addicted to cocaine and heroin, and experienced multiple health issues.  On March 20, 2017, CYS obtained emergency custody of Child and placed Child in foster care.   At that time, the court appointed Louis Mattioli, Esq. ("Attorney Mattioli"), to represent Mother.  Mother visited with Child three times in April 2017, and then temporarily ceased visitation with Child and communication with CYS while she "was dealing with [her] drug addiction." N.T. Hearing, 12/11/18, at 48.  Mother was incarcerated from

October 3, 2017, until November 17, 2017. During that time, on October 27, 2017, the trial court granted Attorney Mattioli's Motion to Withdraw as Counsel because he had not been able to contact Mother. On November 20, 2017, three days after her release from incarceration, Mother telephoned her CYS caseworker, Krista Dean, to request visitation with Child. Ms. Dean returned Mother's phone call on December 1, 2017, wherein she left Mother a voice message. On the same day, Mother returned the telephone call and spoke with Ms. Dean. Mother informed Ms. Dean that she was complying with services, and inquired about what steps she needed to take to begin visitation; Ms. Dean advised Mother that she needed to consult with her supervisor prior to setting up visitation. On December 11, 2017, Ms. Dean contacted Mother and left a voice message. During this time, Mother physically went to the CYS office three times in an attempt to make contact with Ms. Dean. Mother left messages with the receptionist, tried to use the lobby phone to contact Ms. Dean, and left paperwork with the receptionist to show that she was participating in a life skills class, a drug and alcohol program, and counseling services. On January 2, 2018, Mother called Ms. Dean and left a voice message.

On January 4, 2018, before CYS had scheduled Mother's requested visitation with Child, CYS filed a Petition to Involuntarily Terminate Mother's Parental Rights ("Petition"). CYS filed the Petition pursuant to Section 2511(a)(1) of the Adoption Act, asserting that for the six months immediately preceding the filing of the Petition Mother has either "evidenced a settled

purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1).[1] On the same day, the trial court re-appointed Attorney Mattioli to represent Mother during the termination proceedings.

On December 11, 2018, and January 9, 2019, the trial court held a hearing on CYS' Petition. CYS presented testimony from Ms. Dean, CYS caseworker, who testified, *inter alia*, that Mother had not visited with Child in the six months preceding CYS' filing of the Petition. Mother testified on her own behalf and explained the efforts she made from November 2017 to January 2018 to set up visitation with Child.

On April 2, 2019, the trial court issued a Decree denying CYS' Petition and finding that CYS did not present clear and convincing evidence to involuntarily terminate Mother's parental rights pursuant to Section 2511(a)(1). Order, 6/2/19, at 1 (unpaginated). The trial court considered, *inter alia*, "the explanations given by Mother as to her lack of contact with [C]hild in light of the totality of the circumstances [and] the barriers in place which precluded Mother from having contact with [Child,] specifically the caseworker's delay in responding to Mother's repeated requests to see [C]hild." ***Id.*** at 2 (unpaginated).

CYS timely appealed. Both CYS and the trial court complied with Pa.R.A.P. 1925.

---

[1] Visitation between Mother and Child resumed in April 2018.

CYS raises the following issues for our review:

1. Did the trial court commit an error of law or otherwise abuse its discretion when it denied [CYS'] Petition to terminate the natural parents' rights finding the Appellant failed to meet its standard of clear and convincing evidence?

2. Did the trial court commit an error of law or otherwise abuse its discretion by concluding [CYS] constructed a barrier[,] which prevented [M]other from visiting with [C]hild without applying a reasonable firmness standard?

3. Did the trial court commit an error of law or otherwise abuse its discretion when it determined that [M]other's lack of a court appointed counsel, due to his withdrawal, contributed to her lack of contact with [C]hild prior to the filing of the termination of parental rights Petition?

CYS' Br. at 3 (numbers added and some capitalization omitted).

When we review a trial court's decision to grant or deny a petition to involuntary terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *In re T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free

to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). Provided that the court determines the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted).

In its first issue, CYS avers that the trial court abused its discretion when it determined that CYS did not present clear and convincing evidence to involuntarily terminate Mother's parental rights. CYS' Br. at 13. CYS argues that after Mother's "seven-month hiatus" from contact with CYS or Child, the trial court incorrectly placed more weight on Mother's "sudden involvement" and requests for visitation that "were not immediately addressed." *Id.* at 14.

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that "the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition

either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights. *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001). Although the statute focuses on an analysis of the six months immediately preceding the filing of the petition, the court must consider the whole history of a given case and may consider a parent's inaction before the six-month statutory provision. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). Additionally, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *Id.* (citations omitted).

This Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than

> a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations and internal paragraph breaks omitted).

Moreover, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* (citation omitted). And most importantly, "[p]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* (citation omitted).

Our review of the record reveals that the trial court did not abuse its discretion when it concluded that CYS failed to present clear and convincing evidence to terminate Mother's parental rights under Section 2511(a)(1). The trial court looked at the totality of the circumstances, based on the evidence presented by CYS, and concluded that CYS' delay in returning phone calls and setting up visitation, rather than Mother's alleged drug addiction, was the obstacle to Mother performing her parental duties during the six months immediately preceding the filing of the Petition. In its Rule 1925(a) Opinion,

the trial court highlighted the fact that CYS failed to present any evidence that Mother was using illegal drugs during the six-month period immediately preceding the filing of the Petition. *See* Trial Ct. Op., 6/27/19, at 10. Further, the trial court found Mother's testimony to be credible that in the six months preceding the filing of the Petition, Mother spent one month incarcerated and then spent the last two months trying to get in contact with her CYS caseworker and set up visitations. The trial court placed great weight on Mother's explanations that she made numerous phone calls to her caseworker, physically appeared three times at the CYS office, and provided CYS with paperwork to show her compliance with services over a two-month period with delayed responses from CYS. The trial court also considered the fact that CYS failed to schedule visitation until after it filed the Petition.

The trial court opined:

But for Ms. Dean's delay in contacting Mother, Mother could have had more contact with her son prior to the filing of the Petition []. This [c]ourt finds that Ms. Dean's inaction was the barrier that hindered Mother from having visits with her son prior to filing of [CYS]' Petition. [CYS] alleges that Mother's barrier was her drug addiction. However there was no evidence presented by [CYS] that Mother was using illegal substances six (6) months prior to the filing of the Petition []. . . . This [c]ourt finds that Mother's actions six (6) months prior to the termination of Mother's parental rights, discussed above, certainly do not demonstrate Mother evidencing a settled purpose of relinquishing her parental rights or Mother refusing to perform her parental rights.

Based upon Mother's testimony and that of the caseworker, Ms. Dean, this [c]ourt finds that Mother did explain why she had not [had] contact with her son during the six months prior to filing the Petition []. Mother tried calling Ms. Dean many times and appeared at the [CYS] office three times in an attempt to speak

to Ms. Dean. Ms. Dean did not return Mother's telephone calls until ten to eleven days after Mother's initial attempt[s] to schedule a visit[,] which hindered Mother's ability to visit with her son. Conveniently, visits were scheduled after the filing of the Petition [].

*Id.* at 9-10. The record supports the trial court's findings. We decline to reweigh the evidence or interfere with the trial court's credibility determinations.

Since the only evidence CYS presented to establish that Mother had demonstrated "a settled purpose of relinquishing a parental claim to a child" was Mother's failure to visit or contact Child, and CYS prevented Mother from doing so, we find no abuse of discretion in the trial court's denial of CYS' Petition.

CYS next avers that the trial court abused its discretion in denying CYS' Petition because Mother failed to exercise "reasonable firmness" in "resisting obstacles placed in the path of maintaining the parent-child relationship." CYS' Br. at 17 quoting *B., N.M.*, 856 A.2d at 855. CYS argues that Mother failed to contact CYS while she was incarcerated, her testimony regarding her efforts to contact CYS in November 2017 through January 2018 were uncorroborated, and there was no testimony about Mother inquiring about Child's well-being or attempts to send gifts or cards. *Id.* at 19.

As discussed above, the trial court found Mother's testimony credible that, upon release from incarceration, she contacted CYS several times to request visitation with Child by placing numerous telephone calls to her

caseworker, physically appearing at the CYS office three times, and providing the CYS receptionist with paperwork to show her compliance with services. In turn, the trial court made a finding that the CYS caseworker did not have a reasonable explanation for waiting ten to eleven days to return each of Mother's telephone calls. Trial Ct. Op. at 7. Based on these findings, which are supported in the record, the trial court found that CYS failed to provide clear and convincing evidence to terminate Mother's parental rights pursuant to Section 2511(a)(1). Once again, this Court declines to reweigh the evidence or interfere with the trial court's credibility determinations. Accordingly, we find no abuse of discretion.

CYS cites **B., N.M., supra**, in support of an argument that Mother did not exercise reasonable firmness to overcome obstacles and perform parental duties while incarcerated. CYS Br. at 18. This case is easily distinguished and, thus, CYS' arguments are unavailing.

In **B., N.M.**, a mother and her new husband filed a termination petition against father, who was incarcerated for the duration of the ten-year-old child's life and had sporadic contact with the child. **See B., N.M.**, 856 A.2d at 850-854. The trial court denied the petition, concluding that mother had created obstacles to the father having contact with Child. **Id**. at 857. This Court reversed, holding that a parent "must act affirmatively to maintain his relationship with his child, even in difficult circumstances." **Id.** at 856 (citation omitted).

Instantly, Mother was not incarcerated for the duration of Child's life, but rather for one month. While there was no evidence that Mother attempted to contact CYS during her incarceration, there was evidence that she did so numerous times and in numerous ways upon her release from incarceration. The trial court chose to place greater weight on Mother's efforts to maintain contact with Child after her release and, as stated above, we decline to reweigh the evidence on behalf of the trial court.

In CYS' third issue, CYS avers that the trial court abused its discretion when it made a finding that Mother's lack of court appointed counsel contributed to her not having contact with Child when there was no testimony that Mother knew her counsel withdrew or that Mother attempted to contact her counsel. CYS' Brief at 20-21. Essentially, CYS argues that the trial court's finding is not supported in the record. This argument lacks merit.

Our review of the record reveals that the trial court issued an October 27, 2017 Order granting Attorney Mattioli's Motion to Withdraw as Counsel and a January 4, 2018 Order reappointing Attorney Mattioli to represent Mother. The trial court made a finding that, upon her release from incarceration, Mother did not have the assistance of counsel during the two months that she attempted to contact CYS for visitation. **See** Trial Ct. Op. at 12-13. The trial court considered this fact when looking at the totality of the circumstances and evaluating the obstacles in place that precluded Mother

from having contact with Child. ***See id.*** As the record supports the trial court's findings, we find no abuse of discretion.[2]

In sum, the record supports the trial court's findings and we find no abuse of discretion in the trial court's denial of CYS' Petition.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/04/2019

---

[2] CYS does not argue or provide authority to support an argument that Mother's lack of representation by counsel leading up to the filing of the Petition was an incorrect factor for the trial court to consider when deciding CYS' Petition. We, therefore, decline to address this issue. ***In re R.D.***, 44 A.3d 657, 674 (Pa. Super. 2012) (concluding that issue is waived for lack of discussion or citation to relevant authority and explaining that this Court "will not act as counsel and will not develop arguments on behalf of an appellant.")