J-A24022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF A.L.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.B. AND G.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1323 EDA 2021 |

Appeal from the Order Entered June 4, 2021
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2020-A9057-40

| | | |
|---|---|---|
| IN RE: ADOPTION OF T.D.S, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.B. AND G.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1324 EDA 2021 |

Appeal from the Order Entered June 4, 2021
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2020-A9058-40

BEFORE:   LAZARUS, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 3, 2021**

In this consolidated appeal, B.B. ("Stepfather") and G.B. ("Mother") (collectively, "Appellants") appeal from the June 4, 2021 Orders that denied Appellants' Petitions to Involuntary Terminate the Parental Rights of [T.D.S.]

_____

[*] Retired Senior Judge assigned to the Superior Court.

("Father"), to five-year-old T.D.S. and four-year-old A.L.S. (collectively, "Children"). Upon review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

The relevant factual and procedural history, as gleaned from the trial court Opinion and the certified record, is as follows. Father has an extensive history of drug and alcohol abuse and has been to drug and alcohol rehabilitation treatment multiple times. Mother and Father were never married and are parents to T.D.S, who was born in February 2016, and A.L.S., who was born in March 2017. In May 2017, while Father was attending drug and alcohol rehabilitation treatment, he agreed to allow Mother to have sole legal and physical custody of Children. Mother and Father also agreed that Father was allowed to visit with Children when the parties mutually agreed.

In September 2018, Father was involved in car accident and arrested for driving under the influence of heroin. In April 2019, Father entered a guilty plea and the trial court sentenced Father to two to five years' incarceration. In total, Father was incarcerated from September 2018 until September 2020. While incarcerated, Father continued to try to maintain contact with Children through phone calls and letters. Mother took Children to visit Father in prison approximately six times until Mother unilaterally decided that Children should not have contact with Father in September 2019.

In November 2019, Mother married Stepfather, who became very involved in helping Mother care for Children. After Mother ceased bringing Children to visit, Father continued to try to maintain contact with Children

through phone calls, letters, and requests that Mother bring Children to see him. Father maintained a "contact log" indicating that he called Mother approximately 80 times to ask about Children, and that Mother answered approximately half the time. The "contact log" also reflected that Father sent approximately 26 letters to Children while incarcerated, and texted Mother approximately 25 times upon release to request visitation with Children.

On September 2, 2020, and September 10, 2020, Appellants filed petitions to involuntarily terminate Father's parental rights to T.D.S. and A.L.S., respectively, and on September 11, 2020, Appellants filed a Petition for Adoption. On October 20, 2020, the trial court appointed counsel for Children and on March 25, 2021, the trial court held a hearing on Appellants' termination petitions. Mother presented testimony from herself, Children's maternal grandfather, and Stepfather. Father presented testimony from himself and Children's paternal grandfather. On June 4, 2021, after considering briefs, the trial court denied Appellants' termination petitions.

Appellants timely appealed. Both Appellants and the trial court complied with Pa.R.A.P. 1925.

**ISSUES RAISED ON APPEAL**

Appellants raise the following issues for our review:

I. Whether the trial court erred/abused its discretion in denying and dismissing Appellants' petition for involuntary termination of parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) when there was competent, clear[,] and convincing evidence that [F]ather evidenced a settled purpose to relinquish parental rights to [C]hildren for a period of at least six months prior to the filing of the petition?

II. Whether the trial court erred/abused its discretion in denying and dismissing Appellants' petition for involuntary termination of parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) when there was competent, clear[,] and convincing evidence that because of [] Father's repeated and continued incapacity, drug abuse, neglect and refusal and inability to act as a parent, [C]hildren had been without "essential parental care, control or subsistence necessary for (their) physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied by the parent?"

III. Whether the trial court erred/abused its discretion in denying and dismissing Appellants' petition for involuntary termination of parental rights pursuant to 23 Pa.C.S. § 2511(b) when competent, clear[,] and convincing evidence showed that [F]ather had no bond with [C]hildren, that it was in the best interests of [C]hildren to terminate the parental rights of [F]ather, and that the proposed adoptive father met the needs and welfare of [C]hildren?

Appellants' Br. at 6 (some capitalization omitted).

**LEGAL ANALYSIS**

When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *T.S.M.*, 71 A.3d at 267. We give great deference

to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted).

**Termination Pursuant to Section 2511(a)(1)**

Appellants first aver that the trial court abused its discretion when it failed to terminate Father's parental rights pursuant to Section 2511(a)(1). Appellants' Br. at 16. Appellants argue that Father prioritized drugs over Children for their entire lives, that he essentially abandoned Children, and that his writing occasional letters to Children does not constitute performance of parental duties. *Id*.

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights. *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001). Although the statute focuses on an analysis of the six months immediately preceding the filing of the petition, the court must consider the whole history of a given case and may consider a parent's inaction before the six-month statutory provision. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). Additionally, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *Id.* (citations omitted).

This Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the

child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations, internal quotation marks, and internal paragraph breaks omitted).

Moreover, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* (citation omitted).

Our review of the record reveals that the trial court did not abuse its discretion when it concluded that Appellants failed to present clear and convincing evidence to terminate Father's parental rights under Section 2511(a)(1). The trial court considered the totality of the circumstances and concluded that Father did not demonstrate a settled purpose of relinquishing his parental rights and that he exercised reasonable firmness in overcoming obstacles that Mother placed in his path. Further, the trial court found Father's testimony to be credible that, prior to his incarceration, he was present in Children's lives and helped care for them. *See* Trial Ct. Op., filed 7/14/21, at

5.  The trial court placed great weight on Father's explanations that while he was incarcerated, he attempted to remain in contact with Children through letters and phone calls.  *Id*.

The trial court opined:

> At the hearing, Mother testified she prevented Father from contacting [C]hildren while he was imprisoned because she deemed the contact detrimental to [C]hildren.  Mother asserted any contact from Father with [C]hildren would be against [C]hildren's best interest.  Prior to Father being imprisoned, Father was present in [C]hildren's lives and helped take care of [C]hildren.  While imprisoned, Father attempted to remain in contact with [C]hildren through phone calls and letters.  Father's communication with [C]hildren only ceased because Mother unilaterally decided to terminate all contacts between Father and [C]hildren.

*Id.*  The trial court "found any failure to fulfill his parental duties was because of [F]ather's imprisonment and was a result of Mother's decision to prevent Father from communicating with [C]hildren," and concluded that Appellants failed to demonstrate by clear and convincing evidence that Father refused to fulfill his parental duties under Section 2511(a)(1).  *Id.* at 6.  The record supports the trial court's findings.  We decline to reweigh the evidence or interfere with the trial court's credibility determinations.  Accordingly, we find no abuse of discretion in the trial court's denial of Appellants' petitions.

**Termination Pursuant to Section 2511(a)(2)**

Appellants next argue that the trial court abused its discretion when it failed to terminate Father's parental rights pursuant to Section 2511(a)(2).  Appellants' Br. at 22.  Appellants argue that Father's long term substance

abuse, criminal history and resulting incarceration, and lack of credibility provide a basis to terminate Father's parental rights to Children. *Id*. at 24.

Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

With respect to incarcerated parents, our Supreme Court has held that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control, or subsistence." *S.P.*, 47 A.3d at 830 (citation and internal quotation marks omitted). Incarceration alone is not sufficient to support termination under any subsection, but "incarceration will certainly impact a parent's capability of performing parental duties, and **may** render a parent incapable of performing parental duties under subsection (a)(2)." *In re E.A.P.*, 944 A.2d 79, 82–83 (Pa. Super. 2008) (emphasis in original). "Each

case of an incarcerated parent facing termination must be analyzed on its own facts, keeping in mind . . . that the child's need for consistent parental care and stability cannot be put aside or put on hold[.]" *Id*. at 84.

Applying these principles, the trial court concluded that Appellants failed to present clear and convincing evidence that Father cannot or will not remedy the substance abuse that caused Children to be without Father's parental care, as evidenced by Father attempting to maintain contact with Children while incarcerated, and participating in drug treatment, obtaining employment, pursuing a college degree, and requesting visitation with Children post-incarceration. Trial Ct. Op. at 6. The trial court opined:

> Upon release from prison, Father repeatedly contacted Mother to attempt to set up a reunification plan for himself and [C]hildren. Mother denied Father the opportunity. The [c]ourt further notes that Father is now employed and seeking treatment for his history of drug dependency. In addition, Father is also pursuing a bachelor's degree in college. At the hearing, Father expressed his desire to remain in [C]hildren's lives and assume the responsibilities of a biological father. Father stated he is willing to attend reunification counseling so as to begin the reunification process with [C]hildren. . . The [c]ourt found that [Appellants] failed to show, by clear and convincing evidence, that Father refused to fulfill his parental duties or is incapable of fulfilling his parental duties.

*Id.* The record supports the trial court's findings. Once again, we decline to reweigh the evidence or usurp the trial court's credibility determinations and find no abuse of discretion.

**Termination Pursuant to Section 2511(b)**

- 10 -

In their third issue, Appellants argue that the trial court abused its discretion when it failed to consider the developmental, physical, and emotional needs of Child under Section 2511(b).  Appellants' Br. at 25-26. Appellants argue that the evidence that Stepfather has assumed a parental role in Children's lives and that Children refer to Stepfather as "daddy" demonstrates that termination of Father's parental rights is in Children's best interest under Section 2511(b).  *Id.* at 27.  We disagree.

As discussed above, we find the trial court did not abuse its discretion when it concluded that Appellants failed to demonstrate that Father's conduct warranted a termination of his parental rights under Section 2511(a)(1) and (2).  Accordingly, there is no need for this Court, or the trial court, to engage in the second part of the analysis pursuant to Section 2511(b) to determine if termination is in Child's best interest.  *See A.C.*, 162 A.3d at 1128.

## CONCLUSION

In conclusion, the record supports trial court's findings and, thus, the court did not abuse its discretion when it denied Appellants' petition to terminate Father's parental rights to Children.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/2021