J-A30001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: M.S.H., A MINOR | : IN THE SUPERIOR COURT OF |
| | :     PENNSYLVANIA |
| | : |
| APPEAL OF: L.M.H., MOTHER | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 1270 MDA 2019 |

Appeal from the Order Entered July 1, 2019
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  27-AD-2019

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 07, 2020**

Appellant, L.M.H. ("Mother"), appeals from the July 1, 2019 Order that denied Mother's Petition to Involuntarily Terminate the Parental Rights ("TPR Petition") of R.S. ("Father").  Upon careful review, we affirm.

The relevant procedural and factual history is as follows.  In 2011, Mother and T.F.H. ("Stepmother") began a romantic relationship and they briefly separated from April 2015 until January 2016.  During that time, Mother and R.S. ("Father") conceived now three-year-old M.S.H. ("Child"), who was born in July 2016.  Mother and Stepmother reconciled prior to Child's birth and married in September 2016.  Father moved to South Dakota shortly after Child's birth and has not seen Child since.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On March 14, 2019, Mother and Stepmother filed a TPR Petition against Father, alleging that he evidenced a settled purpose of relinquishing parental rights pursuant to 23 Pa.C.S. § 2511(a)(1). On July 1, 2019, the trial court held a hearing on the TPR Petition.

In its Pa.R.A.P. 1925(a) Opinion, the trial court sets forth an accurate and thorough summary of the relevant evidence presented during the hearing, which we adopt as our own. Trial Ct. Op., filed 8/27/19, at 2-3. In sum, Mother testified that Father has not seen Child since the day she was born and that Child has not received any gifts from Father. Mother explained that Father sent her threatening messages prior to and after Child's birth, and that she has blocked him on social media because she is scared of him. Mother testified that Father paid court-ordered child support, but that she stopped the support after a few months because it was too much of a "hassle." N.T. Hearing, 7/1/19, at 15, 24. Stepmother, likewise, testified that Father sent threatening messages to Mother and has not seen Child since birth.

Father testified that he moved to South Dakota four months after Child's birth to be with his other biological child. He explained that after Mother cancelled court-ordered child support, he attempted to pay Mother voluntary child support, which Mother refused to accept. Father also attempted to set up a monetary account for Child's education, but Mother refused to provide Child's social security number. Father testified that he bought toys and clothes for Child, which he sent to Child's grandparents. Father stated that he attempted to contact Mother and Stepmother repeatedly only to be blocked

on social media. Father also attempted to contact Mother's relatives to get updates on Child.

At the conclusion of the hearing, the trial court denied the TPR Petition. Mother timely appealed. Mother and the trial court complied with Pa.R.A.P. 1925.[1]

Mother raises the following issue on appeal: "Whether [Father] failed or refused to perform parental duties on behalf of the minor child for the six month period prior to the filing of the involuntary termination of parental rights petition?" Mother's Br. at 2.

When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009)

_____

[1] In her Pa.R.A.P. 1925(b) Statement, Mother alleged the following error: "The [t]rial [c]ourt erred in refusing to grant [Mother]'s [TPR Petition]." 1925(b) Statement, filed 7/29/19. In its Pa.R.A.P. 1925(a) Opinion, the trial court determined that Mother's claim of error should be waived because it is overly vague; the trial court then proceeded to address the merits of Mother's claim. Instantly, because the trial court was able to address Mother's claim, we decline to find waiver. *See Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007) (declining to find waiver for vague 1925(b) statement when the lower court "readily apprehended Appellant's claim and addressed it in substantial detail").

(citation omitted). We may not reverse merely because the record could support a different result. *In re T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted).

In her sole issue, Mother avers that the trial court abused its discretion when it determined that Mother did not present clear and convincing evidence to involuntarily terminate Father's parental rights. Mother's Br. at 4. Mother argues that Father did not have any obstacles in his way to perform his

parental duties and, despite this, failed to perform parental duties over the course of Child's entire life.  *Id.* at 6-7.

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties."  23 Pa.C.S. § 2511(a)(1).  The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights.  *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001). Although the statute focuses on an analysis of the six months immediately preceding the filing of the petition, the court must consider the whole history of a given case and may consider a parent's inaction before the six-month statutory provision.  *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). Additionally, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination."  *Id.* (citations omitted).

This Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

>There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations, internal quotation marks, and internal paragraph breaks omitted).

Moreover, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* (citation omitted). And most importantly, "[p]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* (citation omitted).

Our review of the record reveals that the trial court did not abuse its discretion when it concluded that Mother failed to present clear and convincing evidence to terminate Father's parental rights under Section 2511(a)(1). The

trial court looked at the totality of the circumstances, based on the evidence presented by Mother, and concluded that Mother took actions to prevent Father from having contact with Child, and that Mother was the obstacle that prevented Father from performing his parental duties.

The trial court found Father's testimony to be credible that he made frequent attempts through the years to contact Child and perform parental duties, but Mother and Stepmother averted these efforts. The trial court placed great weight on Father's explanations that he repeatedly attempted to contact Mother and Stepmother, pay court-ordered and voluntary child support, send clothes and toys to Child, and contact relatives to receive updates on Child. *See* Trial Ct. Op., filed 8/27/19, at 3. In turn, the trial court did not believe Mother and Stepmother's testimony that they prevented Father from seeing Child because Father threatened Mother. *Id*.

The trial court opined:

[T]he court found that Mother's claims were not credible, and that Mother took actions to prevent Father from having contact with [Child] and performing his parental duties. The trial court found Father's testimony to be credible. Father was using the resources available to him and was exercising reasonable firmness in resisting the obstacles placed in his path of maintain a parent-child relationship.

*Id.* at 1. The record supports the trial court's findings. We decline to reweigh the evidence or interfere with the trial court's credibility determinations.

Since the only evidence Mother presented to establish that Father had demonstrated "a settled purpose of relinquishing a parental claim to a child"

- 7 -

was Father's failure to visit or contact Child, and Mother prevented Father from doing so, we find no abuse of discretion in the trial court's denial of Mother's Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/07/2020