J-A30012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ADOPTION OF: S.D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.M.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1273 MDA 2019 |

Appeal from the Decree Entered July 3, 2019
In the Court of Common Pleas of York County Orphans' Court at No(s):
2019-0009a

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 26, 2020**

Appellant, T.M.A. ("Mother"), appeals from the July 3, 2019 Decree that granted the Petition for Involuntary Termination of Parental Rights ("TPR Petition") filed by D.D. ("Father") and involuntarily terminated Mother's parental rights to S.D. ("Child").  Upon careful review, we affirm.

The lower court has provided this Court with a well-written, thorough, and comprehensive Pa.R.A.P. 1925(a) Opinion, which sets forth the relevant factual and procedural history of this case, and we adopt its detailed recitation for purposes of this appeal.  **See** Trial Ct. Op., filed 8/19/19, at 1-8.  In sum, Mother and Father are parents to ten-year-old Child.  Mother has a history of substance abuse, including a 2015 guilty plea to a drug offense.  Since 2015, Father has had primary physical custody of Child and Mother has had partial

_____

[*] Retired Senior Judge assigned to the Superior Court.

physical custody every other weekend. The stipulated custody order provided that, upon Father's request, Mother shall take a drug test within forty-eight hours and in the event she fails the requested drug test, her custody rights will be automatically suspended until further order of the court. In June 2018, after Mother failed to exercise her partial physical custody with Child, Father requested that Mother take a drug test and Mother refused.

Father filed a Petition for Special Relief and a Petition to Modify Custody, and on July 23, 2018, after a hearing, the custody court made a finding that Mother failed or refused to take a drug test and scheduled a custody conciliation conference, which Mother failed to attend. On August 28, 2018, the custody court issued an Interim Order, which awarded Father sole legal and physical custody of Child, suspended Mother's partial physical custody rights pending a scheduled custody trial, ordered Mother to attend a custody workshop, and ordered Mother to undergo a threat of harm evaluation pursuant to 23 Pa.C.S. § 5329 to determine whether she posed a threat of harm to Child because of her 2015 drug conviction.

Mother failed to appear at the pre-trial conference and to provide documentation that she attended the custody workshop or participated in a threat of harm evaluation. On January 11, 2019, the custody hearing began. Mother appeared, and the custody court reinstated her shared legal and partial physical custody rights to Child. The custody court scheduled the hearing to resume on March 29, 2019. Notably, Mother failed a drug test on February

- 2 -

27, 2019, and on March 22, 2019, the custody court once again suspended her custody rights pending the conclusion of the custody trial.

On the same day the custody trial began, January 11, 2019, Father filed a TPR Petition pursuant to 23 Pa.C.S. § 2511(a)(1), asserting that Mother had failed to perform parental duties for the six months immediately preceding the filing of the Petition. The court scheduled a hearing and continued the custody proceedings pending the outcome of the hearing.

At the TPR hearing, the court heard testimony from Child; Father; Mother; Ashley Turgeon Milspaw, Psy.D., expert in Psychology and bonding assessment evaluator; Joshua Talarico, Ph.D, drug and alcohol counselor; and K.S., Mother's boyfriend's mother.

In sum, Father testified that Mother has not seen or contacted Child in the past six months. Father further testified that Mother did not contact him to request visitation, call to speak to Child, send or drop off gifts for Child, write letters to Child, or participate in Child's educational or medical care during that time. Father acknowledged that Mother contacted him via text message one time in October 2018 to ask if she could drop off a gift for Child and he did not respond. *See* Trial Ct. Op., filed 8/19/19, at 5.

Mother testified that she did not check her mail for four months to receive information about court proceedings, re-engaged in drug and alcohol counseling and a methadone treatment program in October but still used marijuana recreationally, asked Father for visitation with Child in August 2018 and Father denied her request, and hired an attorney to pursue visitation with

- 3 -

Child as soon as she had enough money. Mother admitted that she did not have contact with Child from June 2018 until January 2019 and stated that she was not in her right state of mind during that time. *See id.* at 6-7.

Child testified that he calls his stepmother "Mom" and calls Mother by her first name. Child stated that Mother has treated him awfully, lies to him all the time, and has not seen him in six or seven months. Child expressed that he does not have a close relationship with Mother and does not want her to be his mother anymore. *See id* at 4; N.T. Hearing, 4/24/19, at 5-10.

The court also heard testimony from Dr. Milspaw, who stated that Child had a bond with Father and his stepmother but did not have a strong bond with Mother, and Child would not experience emotional harm if the court terminated Mother's parental rights. Dr. Talarico testified that since October 2018, Mother was compliant with her methadone treatment program and drug, and alcohol counseling, but that the program did not test for marijuana use. *See* Trial Ct. Op. at 6, 16.

On July 2, 2019, the court issued a Decree terminating Mother's parental rights to Child.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issues on appeal:

1. Whether the [c]ourt improperly found that Father met his burden by establishing clear and convincing evidence to involuntarily terminate parental rights.

2. Whether Mother's actions toward sobriety and regaining her custody rights, which began prior to the petition to terminate her rights, and continued after the petition, should be considered.

3. Whether Father's campaign to keep Mother away from [C]hild should be considered in Mother's favor when weighing the actions taken by Mother to made contact with [C]hild.

4. Whether evidence of the sibling's strong bond with [C]hild should be considered.

5. Whether the court improperly relied on Father's bonding assessment regarding step[]mother and [C]hild, when the expert did not review any collateral resources from Mother or reach out to Mother for input.

6. Whether the [c]ourt improperly considered a "needs and welfare analysis prior to fully determining whether Mother's actions justified termination.

Mother's Br. at 3 (numbering added for ease of disposition).

When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *In re T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free

- 5 -

to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." ***In re Adoption of A.C.***, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." ***Id.*** (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." ***Id.*** (citation omitted).

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights. ***In re B.L.L.***, 787 A.2d 1007, 1013 (Pa. Super. 2001). Although the statute focuses on an analysis of the six months immediately

preceding the filing of the petition, the court must consider the whole history of a given case and may consider a parent's inaction before the six-month statutory provision. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). Additionally, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *Id.* (citations omitted).

This Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations, internal quotation marks, and internal paragraph breaks omitted).

Moreover, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to

maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." ***Id.*** (citation omitted). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." ***Id.*** (citation omitted). And most importantly, "[p]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." ***Id.*** (citation omitted).

In her first issue, Mother challenges both the sufficiency and weight of the evidence. Mother avers that the trial court abused its discretion when it determined that Father presented clear and convincing evidence to involuntarily terminate her parental rights. Mother's Br. at 3, 11. Mother concedes that she had "little contact" with Child over a six-month period but argues that the lower court failed to consider that she made efforts to re-engage in drug and alcohol treatment preceding the filing of the TPR Petition, her visitation with Child was suspended via a custody order, and Father disallowed contact with Child. ***Id.*** at 12-18. Finally, Mother argues that the court placed too much focus on Mother's failed drug test rather than her efforts to maintain sobriety. ***Id.***

In her next five issues, Mother raises additional challenges to the weight of the evidence. Mother argues that the court failed to consider her efforts towards sobriety, Father's actions to keep Mother away from Child, and Child's

bond with his sibling. *Id.* at 3, 18-22. Mother also contends that the court placed undue weight on a bonding analysis that did not include an interview with Mother. *Id.* at 3, 23-25. Finally, Mother asserts that the court placed too much weight on a "needs and welfare" analysis rather than focusing on whether Mother evidenced a settled purpose of relinquishing her parental claim to Child. *Id.* at 3, 25-26.

After a careful review of the parties' arguments and the record, we conclude that the record supports the trial court's findings. We decline to reweigh the evidence or usurp the lower court's credibility determinations. *See In re T.S.M.*, 71 A.3d at 267; *In re M.G.*, 855 A.2d at 73-74. Accordingly, we adopt the well-written, thorough, and comprehensive Opinion of the Honorable N. Christopher Menges as our own. *See* Trial Ct. Op., filed 8/19/19, at 8-23 (finding that for the six months prior to the filing of the petition, Mother had no contact with Child, failed to perform parental duties for Child, made minimal attempts to contact Father or his counsel, and re-engaged in drug and alcohol counseling but continued to illegally use marijuana, and concluding that it would be in Child's best interest to terminate Mother's parental rights pursuant to Section 2511(a)(1) and (b)).

Decree affirmed. We direct the parties to attach a copy of the trial court's August 19, 2019 Pa.R.A.P 1925(a) Opinion to any future filings.

Judge Colins joins the memorandum.

Judge Nichols notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/2020

IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
ORPHAN'S COURT DIVISION

IN THE INTEREST OF:                    :          No. 2019-0009a
██████████████, A MINOR              :
                                       :
                                       :
                                       :

## MEMORANDUM OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a)(2)(ii) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

AND NOW, this 19th day of August, 2019, the Court is in receipt of Mother's Notice of Appeal and Statement of Errors Complained of Under Pa.R.A.P. 1925(b), as required by the Rules of Appellate Procedure for a Children's Fast Track Appeal. Pa.R.A.P 1925(a)(2)(i). The Court hereby reaffirms its Order dated July 2, 2019, terminating Mother's parental rights to the minor Child, ██████████.

### FACTUAL AND PROCEDURAL HISTORY

In 2009, ███████████ ("Child"), was born on Christmas Day to ██████████ ("Father"), and ████████████ ("Mother"). Two years later, on December 9, 2011, the first custody order between the parties was entered by this Honorable Court and docketed at 2011-FC-001479-03. The most recent Stipulated Custody Order was entered on July 7, 2015 (the "Stipulated Order"). Therein, the parties agreed that Father would have primary physical custody of the Child, subject to Mother's rights of partial physical custody on alternating weekends from Friday at 6:00 p.m. until Sunday when Father picks the Child up after work or until 6:00 p.m., if Father does not have work. Additionally, Mother was given partial physical custody rights on Saturdays when Father

1

RECEIVED

AUG 2 1 2019

was working, from 6:30 a.m. until 6:00 p.m. The Stipulated Order further provided that upon Father's request, Mother will take a drug test within 48 hours, and in the event Mother fails a drug test, then her rights of partial physical custody will be automatically suspended until further order of court.

On July 23, 2018, following a hearing on Father's Petition for Special Relief filed July 16, 2018, the Court entered an Order stating that Mother had failed or refused to take a drug test that Father requested, Mother did not exercise her custody rights for a weekend, and the matter was remanded to a conciliation conference. On August 16, 2018, a Conciliation Conference was held, but Mother did not appear either in person, by telephone, or through counsel. By Interim Order for Custody, Pending Trial dated August 28, 2018, Mother's rights of legal and physical custody were suspended pending a determination being made by the Court as to whether she poses a threat of harm to the Child as a result of her past drug conviction in 2015, and alleged continued drug use. Per the said Interim Order, Father was granted sole legal and primary physical custody of the Child, and Mother was required to undergo a threat of harm evaluation. It was noted in the Interim Order that the parties had an enforcement conference with Domestic Relations scheduled earlier in the same day as the Conciliation Conference, and Father reported that Mother failed to appear for that conference as well.

On October 23, 2018, a Pre-Trial Custody Conference was held, and a Custody Trial was scheduled for December 19, 2018. Again, Mother failed to appear before the Court either in person, by telephone, or through counsel. The Order Scheduling Custody

2

Trial dated October 23, 2018 also indicated that Mother had not filed a Criminal Record/Abuse History Verification Affidavit, and had not completed the Custody Workshop, as required by the August 28, 2018 Interim Order for Custody, Pending Trial. By Order dated December 12, 2018, the Custody Trial was rescheduled to January 11, 2019.

The Custody Trial began, but was not completed, and the second day of the Custody Trial was scheduled for March 29, 2019. At the conclusion of the first day of the Custody Trial, the Court entered an Order dated January 11, 2019, wherein the suspension of Mother's custodial rights was vacated, and the parties were to follow the custody schedule as set forth in the Stipulated Order. Additionally, the parties were directed to arrange for Mother to obtain a Threat of Harm Evaluation.

On January 11, 2019, the same day the Custody Trial began, Father filed a Petition for Involuntary Termination of Parental Rights, seeking to terminate Mother's rights to the Child. Father filed another Petition for Special Relief on February 8, 2019, again raising concerns over Mother's continued drug use. By Order dated February 20, 2019, Mother was directed to take a drug test at Father's expense. After a hearing on March 22, 2019, an Order was entered the same day indicating that Mother had in fact, failed a drug test on February 27, 2019, and thus, her custodial rights were again suspended until the final day of the Custody Trial on March 29, 2019. In the meantime, a Termination of Parental Hearing ("TPR Hearing") was scheduled for April 29, 2019. An

3

Order was entered on March 26, 2019, continuing the custody proceedings until further order of court pending the outcome of the TPR Hearing.

The first half of the TPR Hearing was held on April 29, 2019, and the second half was held on July 2, 2019. At the TPR Hearing held on April 29, 2019, the Court interviewed the Child with the parties' respective counsel present, as well the Child's GAL. During the interview, the Child referred to Mother as ████, and his step-mother, ████ as "Mom." When asked what he calls Mother when he's around her, he said "Mom" because he didn't want to hurt her feelings. The Child further stated that Mother lies to him repeatedly and he had not seen Mother in six or seven months.

Following the Child's interview, the Court heard testimony from Ashley Turgeon Milspaw, Psychologist, of Gallant Psychological and Forensic Services. Father retained the services of Dr. Milspaw to conduct a bonding assessment in February, 2019. Dr. Milpaw's report was provided to the Court as Father's Exhibit 2; the documentation reviewed by her in assisting in her findings was also provided to the Court as Father's Exhibit 9. In sum, Dr. Milspaw testified that the Child was well bonded with Father and his step-mother, but was not bonded with Mother and would not be harmed if the parent-child relationship between Mother and the Child was terminated. Dr. Milspaw further testified that just as the Child had done when the Child was interviewed by the Court, the Child referred to Mother as ████, stated that she had lied to him in the past, and he preferred not to be around her.

4

Lastly, Father testified at the TPR Hearing on April 29, 2019. In brief summary, Father testified that the following events occurred during the six months leading up to the filing of the Petition for Involuntary Termination of Parental Rights:

Mother had been evicted from her residence on more than one occasion.

Mother failed to exercise her weekend of custody in early June 2018 due to her own self-reported mental health issues.

Mother's last period of custody prior to having her rights suspended was Father's Day weekend 2018.

In late June/early July 2018, Mother told Father that she was in New York at a funeral and could not exercise custody of the Child, when in fact, she was in Ocean City, New Jersey.

On July 11, 2018, Father requested that Mother take a drug test and she failed to do so.

Mother did not participated in the Child's education or medical care in any way.

From July 11, 2018 to on or about October 6, 2018, Mother had no contact with Father or the Child, either face to face, by telephone, text message, e-mail, or otherwise. When Mother did contact Father on or about October 6, 2018, she requested to bring a gift to the Child, not to exercise custody of the Child. Father did not respond to Mother's request.

Mother did not attempt to contact Father directly between October 2018 and January 2019.

Mother saw the Child in person for the first time since Father's Day weekend 2018 in January 2019 when this Court reinstated Mother's rights.

At the second part of the TPR hearing held on July 2, 2019, Attorney Erika Lauer, Father's former legal counsel, testified that she entered her appearance in this matter on September 12, 2018. During the course of her representation, Attorney Lauer stated that

5

Mother contacted her office once in October of 2018, and though Attorney Lauer returned her call, she was unable to speak with Mother. Attorney Lauer indicated that on or about December 19, 2018, Mother obtained counsel, who she had one e-mail correspondence with regarding Mother having contact with the Child. Attorney Lauer stated that based on her belief and her client's belief that Mother's rights were suspended, Mother's failure to obtain a threat of harm evaluation, and Mother's failure to complete parenting classes, Mother's request to have contact with the Child was denied.

Additionally, Dr. Josh Talarico from Pyramid Health testified that he worked with Mother regarding her substance abuse problems as a counselor. He began treating Mother in September of 2017. Mother also participated in a methadone treatment program with Dr. Talarico, and he reported her "clean date" as being October 16, 2018. Mother had used illegal substances in May, July, August and September of 2018. Even though Mother is on methadone, she uses marijuana recreationally on and off. Dr. Talarico stated that as part of the program, Mother had a self-harm assessment completed, and Mother had never reported a desire to harm herself or others.

Finally, Mother testified to her version of events as follows:

That the Child was well bonded with his half-sibling, ███, who was 4 years old.

Mother testified that she believed that there was a strong bond between herself and the Child.

Mother stated that she did not take the drug test requested by Father in the summer of 2018, because she was afraid that Father would not approve of her methadone use.

6

On or about August 7, 2018, Mother reached out to Father and requested to see the Child, Father denied her request. Father told Mother that her rights were forfeited during this time.

Mother reached out to Father again in early October of 2018, but Father did not respond.

Mother also contacted Father's then attorney, Erika Lauer, but did not speak directly with her.

She testified that she had not received prior notices of court proceedings, because she had not picked up her mail from her former residence nor from her mother in approximately 4 months.

Mother completed her risk of harm evaluation on January 3, 2019, and she paid for the FCR child resources class on January 8, 2019.

Mother goes on to admit that she did not have contact with the Child during the months between Father's Day weekend in 2018 and January 11, 2019. Mother states that she simply was not in her right state of mind at the time.

Attorney David Worley, the Child's GAL, informed the Court that he had met with the Child without anyone else being present on June 27, 2019, and that the Child again asserted the same information and feelings as he had during the in-camera interview with the Court on April 24, 2019.

At the conclusion of the hearing, the undersigned dictated an order on the record terminating Mother's parental rights to the Child. Several findings of facts were also put on the record in open court as follows:

Mother had not seen the Child from Father's Day weekend 2018 until sometime in mid-January 2019.

Mother did not have telephone contact with the Child, did not send gifts to the Child, made very minimal attempts to contact Father or his counsel, and did not file for relief with the Court. In fact, until December 2019 when mother

7

retained legal counsel, Mother had no contact with the Court in this matter since 2017.

Mother has trouble maintaining sobriety.

The Court goes on to opine that most of the custody issues in this matter center around Mother's drug use. Mother chose a drug lifestyle over her son. And thus, through her own actions, Mother has failed to or refused to perform parental duties with respect to the Child.

## ISSUES ON APPEAL

Mother raises the following issues in her 1925(b) Statement, each will be discussed in turn below.

I.   *The Court did not meet its burden of establishing clear and convincing evidence to involuntarily terminate parental rights.*

II.  *Clear and convincing evidence was not established to show that Mother, by conduct continuing for a period of at least six months immediately preceding the filing of a petition either has evidenced a settled purpose of relinquishing parental claim to the child or refused or failed to perform parental duties.*

III. *Whether the evidence established that Mother desired to retain her rights and attempted to exercise her rights, despite Father refusing to allow Mother to have contact.*

IV.  *Whether the Court can terminate parental rights during an active custody matter, after a parent's rights have been improperly suspended and Mother was seeking to re-establish the suspended rights.*

V.   *Whether Mother's actions towards sobriety and regaining her custody rights, which began prior to the petition to terminate her rights, and continued after the petition, should be considered.*

8

VI.     Whether Father's campaign to keep Mother away from the child should be rewarded by terminating Mother's rights.

VII.    Whether Mother's misunderstanding of the custody matter should be used against her in terminating her parental rights.

VIII.   Whether the Court's attempt to expedite the hearing and minimize testimony was a violation of Mother's Due Process rights, and additional hearing testimony should be taken.

IX.     Whether evidence of the sibling's strong bond with the child should be considered.

X.      Whether the Court improperly relied on Father's bonding assessment regarding step-mother and child, when the expert did not review any collateral resources from Mother or reach out to Mother for input.

XI.     Whether the Court improperly relied on factors other than the actions of Mother within the six months prior to the petition.

XII.    Whether the Court improperly considered a "needs and welfare analysis" prior to fully determining whether Mother's actions justified termination.

Statement of Errors Complained of Under Pa.R.A.P. 1925(b), filed July 30, 2019.

## DISCUSSION

The Pennsylvania Superior Court has previously held that in reviewing an appeal from a decree terminating parental rights, the reviewing court is limited to "determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In the Matter of B.L.W.*, 843 A.2d 380 (Pa. Super. 2004). When a trial court has involuntarily terminated parental rights, the reviewing

9

court "must accord the hearing judge's decision the same deference that [it] would give to a jury verdict." *Id.* The reviewing court "must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *Id.*

The termination of parental rights is based on 23 Pa.C.S.A. §2511, generally. Specific to this case, the relevant parts of the statute is as follows:

> (a) General rule – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (b) Other considerations – The court terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a) (1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.
>
> *23 Pa.C.S.A. §2511(a) and (b).*

**I.** ***The Court did not meet its burden of establishing clear and convincing evidence to involuntarily terminate parental rights.***

It is denied that the Court did not meet its burden of establishing clear and convincing evidence to involuntarily terminate Mother's parental rights. As provided in *23 Pa.C.S.A. §2511(a)(1),* Mother's continuing conduct for a period of at least six (6)

10

months immediately preceding the filing of the petition evidenced Mother's refusal or failure to perform parental duties for the Child, because between Father's Day weekend, 2018 and January 11, 2019, Mother had no telephone contact with the Child, did not send gifts to the Child, performed no parental duties for the Child (such as attending to the Child's educational or medical needs), made very minimal attempts to contact Father or his counsel, and did not file for relief with the Court.

The language in the Stipulated Order is clear and unambiguous. Specific to drug testing, the Stipulated Order provides that "upon Father's request, Mother will take a drug test within 48 hours...if Mother fails a drug test, then her rights of partial physical custody will be automatically suspended until further order of court." *Stipulated for Custody Order*, p. 3, July 7, 2015. While it is admitted that Mother did not fail the drug test requested by Father in the summer of 2018, she did refuse, and/or failed to take the drug test. This Court chooses not to split hairs on failing a test or failing to take a test. Mother's refusal to take the drug test leads the Court to believe that Mother would have probably failed the drug test had she taken it at that time. Mother's own testimony that she had relapsed around that time and was using methadone confirms the Court's suspicions. Mother also testified that she did not take the drug test, because she did not want Father to know that she was using methadone. The suspension of Mother's rights during the months between June 2018 and January 2019 were a consequence of Mother's own poor decision making and failure to remedy the problem simply by complying with the drug test that Father had requested. Furthermore, while Mother's rights of partial

11

physical custody were suspended, no language in the Stipulated Order prevented Mother from having telephone contact with the Child or sending the Child gifts during that time.

Therefore, the Court did meet its burden of establishing clear and convincing evidence to involuntarily terminate Mother's parental rights, because Mother's continuing conduct for a period of at least six (6) months immediately preceding the filing of the petition evidenced Mother's refusal or failure to perform parental duties for the Child.

> II. *Clear and convincing evidence was not established to show that Mother, by conduct continuing for a period of at least six months immediately preceding the filing of a petition either has evidenced a settled purpose of relinquishing parental claim to the child or refused or failed to perform parental duties.*

It is denied that the Court did not establish clear and convincing evidence to show that Mother by her own conduct evidenced a settled purpose of relinquishing parental claim to the Child or refused or failed to perform parental duties. Father and Mother both testified that Mother did not have contact with the Child from approximately June 17, 2018 to January 11, 2019. Prior to not complying with the drug test Father requested, Mother declined to exercise her period of custody in late June/early July of 2018. As previously stated, the language of the Stipulated Order is clear. Yet, Mother took no steps to correct the situation she created for herself. She did not advise Father at any time that she was willing to take another drug test, nor did she seek relief from the Court. In fact, Mother testified that she did not receive notice of the proceedings following Father's

12

first petition for special relief because she did not collect her mail for four (4) months. This is not how reasonable and responsible adults act. Mother and Father also both testified that from June 17, 2018 to January 11, 2019, Mother failed to or refused to perform parental duties for the Child, because Mother did not attend to the Child's mental, emotional, physical needs; and Mother did not perform daily caregiving duties for the Child, such as preparing meals, bathing, and the like.

Therefore, the Court did establish clear and convincing evidence to show that Mother evidenced a settled purpose of relinquishing parental claim to the Child or refused or failed to perform parental duties, because ample evidence was presented at the TPR hearing to demonstrate that Mother refused or failed to attend to the Child's mental, emotional, and physical needs for a period of at least six (6) months.

*III.     Whether the evidence established that Mother desired to retain her rights and attempted to exercise her rights, despite Father refusing to allow Mother to have contact.*

It is denied that there was sufficient evidence to established that Mother desired to retain her rights and attempted to exercise her rights, despite Father refusing to allow Mother to have contact. While the Court does not doubt that Mother loves the Child, her actions are quite inconsistent with a "desire to retain her rights" to the Child. Being a parent is not a part-time job; one cannot simply pick and choose when it is convenient to be a parent, which is exactly how Mother behaves. Based on the evidence presented, Mother made no attempts to exercise her parental rights from June 17, 2018 through January 11, 2019. Mother declined to exercise at least one of her custodial periods,

13

Mother violated the Stipulated Order causing her rights to be suspended, and Mother did not seek relief to have her rights be re-instated. While it is not relevant to the time period required by statute for termination of parental rights, this Court wants to note that it gave Mother the benefit of the doubt and reinstated her rights on January 11, 2019, and Mother failed yet another drug test in February of 2019, thus, suspending her rights again. Mother has chosen drugs over the Child and shows a continuing pattern of doing so.

Mother mischaracterizes the suspension of her parental rights as Father not allowing her contact with the Child. The provision regarding drug testing in the Stipulated Order is self-enforcing, Mother has no one to blame but herself for her conduct. Father did not prevent Mother from mailing gifts or letters to the Child, and Father did not prevent Mother from pursuing her own legal action if she felt Father was acting unfairly in restricting her access to the Child.

Therefore, there was sufficient evidence presented at the TPR hearing to establish that Mother did not desired to retain her rights and that she failed to attempt to exercise her custodial rights, because she failed to make any remedial measures to have her custodial rights reinstated.

**IV.** *Whether the Court can terminate parental rights during an active custody matter, after a parent's rights have been improperly suspended and Mother was seeking to re-establish the suspended rights.*

It is denied that the Court committed an error in terminating Mother's parental rights while an active custody matter was pending. It is further denied that Mother's

14

custodial rights were improperly suspended and that Mother was actively seeking to re-establish her suspended rights.

The Court did not commit an error in suspending Mother's parental rights to the Child. Mother's custodial rights were suspended pursuant to the Stipulated Order which the parties entered into on July 7, 2015, not by any action of the Court. The specific language relative to the drug testing provision in the Stipulated Order is clear, unambiguous, and self-enforcing. The Court is puzzled by Mother's blanket assertion that her rights were "improperly" suspended, as the language in the Stipulated Order seems self-explanatory. As to Mother's assertation that she was "seeking to re-establish the suspended rights," the Court finds this equally as puzzling. Looking solely at the custody matter, and not considering the petition to involuntary terminate parental rights, Mother did succeed in having her parental rights reinstated in January 2019. However, within a few short weeks, in February 2019, Mother failed another drug test, thus, causing her parental rights to be suspended again. Federal law recognizes marijuana as an illegal substance and so does this Court. Mother's failure to stay drug-free is beyond concerning. Mother claims that she is seeking to re-establish her suspended rights, yet she continues the same course of conduct and poor decision making which led to her rights being suspended in the first place.

The termination of parental rights is a collateral matter to the custody case. It is not improper for the Court to consider Father's petition during an on-going custody case, because the conduct of the parties during the custody litigation is at the center of whether

15

the parental rights of a party should be terminated. Specifically, whether or not both parties are performing parental duties for the Child, and have been for an excess of six (6) months prior to the date of the filing of the petition for termination of parental rights.

Therefore, the Court did not commit an error in terminating Mother's parental rights while an active custody matter was pending, because the events and conduct of the parties in the custody litigation within the six (6) months prior to the filing of the termination petition are relevant to the termination of parental rights litigation.

### V. Whether Mother's actions towards sobriety and regaining her custody rights, which began prior to the petition to terminate her rights, and continued after the petition, should be considered.

It is admitted that Mother's actions towards sobriety and regaining her custody rights which began prior to the petition to terminate her rights should be considered. It is denied that Mother's actions towards sobriety and regaining her custody rights which occurred after the petition was filed should be considered.

Pursuant to 23 Pa.C.S.A. §2511(a)(1), the relevant time period to consider parental conduct for the purpose of determining whether or not parental rights should be terminated is six (6) months prior to the date of the filing of the petition to involuntarily terminate parental rights. Looking solely at that time period, Mother did make steps towards sobriety, specifically, she started a methadone treatment program and was in counseling for her drug addiction. However, as Mother herself testified to, she also had a relapse during that time and continued to use marijuana (which is a substance that she was not being tested for as part of her methadone treatment). The Court considered all

16

of this in its decision. With respect to Mother's attempts to regain her custody rights during this time period, as stated previously herein, the Court does not consider Mother's actions consistent with those of an individual actively seeking to regain their custodial rights. Just as actions are taken into consideration by the Court, inaction is also taken into consideration.

Pursuant to 23 Pa.C.S.A. §2511(b), "[w]ith respect to any petition filed pursuant to subsection (a) (1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." *23 Pa.C.S.A. §2511(b)*. It is clear under the statute that the Court cannot consider Mother's actions towards sobriety and regaining her custody rights which occurred after the petition was filed. The Court takes note of the fact that Mother failed a drug test in February 2019, only a few short weeks after Mother's custodial rights to the Child were reinstated by this Court, resulting in her custodial rights being suspended again.

Therefore, pursuant to 23 Pa.C.S.A. §2511(a)(1) and (b), the Court may consider Mother's actions towards sobriety and regaining her custody rights which began prior to the petition to terminate her rights should be considered, however, the Court cannot consider Mother's actions towards sobriety and regaining her custody rights which occurred after the petition was filed.

**VI.** *Whether Father's campaign to keep Mother away from the child should be rewarded by terminating Mother's rights.*

17

Mother's sixth issue raised is a matter of opinion and not an allegation of abuse of discretion, error of law, or a claim of insufficient evidence, thus, this Court defers to the record in this matter, as well as the related custody matter, as the Court believes the records are clear and the Court cannot offer any further explanation on the issue raised by Mother.

**VII.** *Whether Mother's misunderstanding of the custody matter should be used against her in terminating her parental rights.*

It is denied that Mother's misunderstanding of the custody matter was used against her in terminating her parental rights. Mother stated that she believed that her custodial rights were suspended because, Father told her so. Mother's reliance on Father's interpretation of the Stipulated Order was of little importance in the Court's decision. What was important to the Court was Mother's conduct in attempting to regain her custodial rights. Mother appeared to just accept her fate rather than fighting for the Child. Again, nothing prohibited Mother from seeking court intervention if she felt her custodial rights were rightly or wrongly being violated by Father. Therefore, the Court did not commit an abuse of discretion, because the Court did not use Mother's misunderstanding of the custody matter against her in terminating her parental rights.

**VIII.** *Whether the Court's attempt to expedite the hearing and minimize testimony was a violation of Mother's Due Process rights, and additional hearing testimony should be taken.*

18

It is denied that the Court committed an abuse of discretion or error of law and that Mother's due process rights were violated because additional testimony as not taken. The Court heard testimony from the Child, Mother, Father, and their collateral witnesses. Each counsel was given the opportunity to cross-examine all witnesses, as well as re-direct their own witnesses. As is shown in the record, the Court had to redirect counsel for both parties numerous times to stay focused and stay on testimony that was relevant. The Court heard lengthy testimony presented by both sides that provided no guidance to the Court on whether or not Mother's parental rights should be terminated. However, despite the length of the proceedings, the facts of this case are pretty straight forward, and the parties themselves through their own testimony admitted most of the relevant factors. The Court does not believe that any other collateral witnesses would have been helpful in this matter, or resulted in a different outcome.

Therefore, the Court did not commit an abuse of discretion or error of law Which resulted in Mother's due process rights being violated, because each party was given ample opportunity to present their case to the Court.

IX. *Whether evidence of the sibling's strong bond with the child should be considered.*

It is admitted that the sibling bonds should be concerned in the decision to terminate the parental rights of a party. Pursuant to 23 Pa.C.S.A. §2511(b), "(t)he court terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." *Id.* This Court holds sibling

19

bonds in high regard in custody matters, after all siblings are often each other's first playmates and first best friends. The Child has a younger sister in Mother's household and is soon going to be a big brother for the second time in Father's household.

Sibling bonds are very important to the developmental and emotional needs of a child, but just like all bonds, the siblings must have time together and actually physically be around each other for such a bond to form. In this matter, the Court did give consideration to the Child's bond with his younger sister, but did not give it much weight. Mother's actions have made it difficult for the Child to appropriately bond with his sister as the Child has not been able to have frequent and continuing contact with his sister. Further, the termination of parental rights, does not necessarily mean the termination of sibling relationships. Post-adoption, the parties are free to make arrangements to continue the sibling relationship between the children, should the parties choose to do so.

Therefore, the Court did not abuse its discretion or commit an error of law, because the Court should have, and did in fact consider the sibling bond between the Child and his younger sister in the decision to terminate Mother's parental rights, but the weight given to that bond was very slight.

X. *Whether the Court improperly relied on Father's bonding assessment regarding step-mother and child, when the expert did not review any collateral resources from Mother or reach out to Mother for input.*

It is denied that the Court improperly relied on Father's bonding assessment regarding step-mother and the Child, when the expert did not review any collateral resources from Mother or reach out to Mother for input. The Court did not put as much

emphasis on the bonding assessment as Mother asserts, in fact, the bond between the Child and his step-mother is of no importance in determining whether or not Mother's parental rights should be terminated. The Court is aware that the bonding assessment was done without input from Mother, but there was little other evidence that Mother had a strong bond with the Child.

When considering to terminate parental rights, the Court must look at "the developmental, physical and emotional needs and welfare of the child." *Id.* The bond between a parent and a child is not always a healthy bond. A child can be very well bonded with their parent, but in a manner that is destructive to the child's well-being. Furthermore, just as the bond between siblings needs time and attention to grow, so does the bond between a parent and a child. Here, Mother admitted that she had no contact with the Child from June 17, 2018 to January 11, 2019. The Child stated during his in-camera interview that he had not seen Mother for months, and referred to her as "Tori." The Child also expressed a strong opinion during the in-camera interview, and several months later to his GAL that he did not want to see Mother. The bonding assessment indicated that the Child would not be harmed by terminating Mother's parental rights, because there was not a strong bond between the Child and Mother. This Court agrees; however, the Court bases its finding on the Court's own observations and evidence, and not the recommendation of Father's bonding assessment.

Therefore, the Court did not abuse its discretion, commit an error of law, or rely on insufficient evidence with respect to its consideration of Father's bonding assessment

21

in deciding to terminate Mother's rights, because the Court did not rely on the bonding assessment as a deciding factor in whether or not Mother's parental rights should have been terminated.

### XI. Whether the Court improperly relied on factors other than the actions of Mother within the six months prior to the petition.

It is denied that the Court improperly relied on factors other than the actions of Mother within the six (6) months prior to the petition. The Court is to consider the developmental, physical and emotional needs and welfare of the child, this may or may not be limited to the direct actions of Mother. For example, how Mother's actions effect the Child, is a relevant factor. The Court noted on the record that Mothers drug addiction has been at the center of the parties' custody dispute, and certainly in the termination proceeding as well. The Court gives the appropriate weight to all the evidence presented before it, but that does not mean equal weight. Mother's pattern of bad decision making and lack of responsibility weigh most heavily against her. Therefore, the Court did not abuse its discretion, commit an error of law or rely on insufficient evidence in considering other factors than Mother's own actions.

### XII. Whether the Court improperly considered a "needs and welfare analysis" prior to fully determining whether Mother's actions justified termination.

It is denied that the Court improperly considered a "needs and welfare analysis" prior to fully determining whether Mother's actions justified termination. Again, the Court gives the appropriate, but not equal weight to all the evidence before it. The needs

22

and welfare of the Child are the prominent concern in this matter; thus, it seems appropriate that at least in some capacity the Court would give some consideration to the subject. Therefore, the Court did not abuse its discretion, commit an error of law or rely on insufficient evidence in considering a "needs and welfare analysis."

## CONCLUSION

For the foregoing reasons, this Court hereby reaffirms its Order dated July 2, 2019, terminating Mother's parental rights to the minor Child, ██████████.

BY THE COURT,

_____
N. CHRISTOPHER MENGES, JUDGE

23