J-S07001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: R.J.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.M.A.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2899 EDA 2022 |

Appeal from the Decree Entered October 21, 2022
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2022-A9037

BEFORE:  DUBOW, J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 21, 2023**

Appellant, D.M.A.S. ("Mother"), appeals from October 21, 2022 decree entered in the Bucks County Orphan's Court that terminated her parental rights concerning thirteen-year-old R.J.S. ("Child").  Upon careful review of the record, we reverse the involuntary termination of parental rights.

Mother is the biological mother of Child, born in January 2010.  Born premature at a gestational age of 25 weeks, Child suffers from significant medical issues, which require skilled nursing care for 18-19 hours per day.[1] He is non-ambulatory, non-verbal, and diaper-dependent.

---

[1] The medical issues include "a brain stem injury, cerebral palsy, chronic lung disease, gastroesophageal reflux disease, a feeding tube, a bleeding disorder, vision and hearing impairment[,] significant developmental delays[, and] a seizure disorder related to his cerebral palsy."  Tr. Ct. Op., 1/25/23, at 2, 10.

Mother also has a "number of very serious medical conditions."[2] Since April 2019, Mother has resided at a skilled nursing facility for treatment of injuries sustained in a motorcycle accident and her other medical conditions. She receives assistance with daily living activities, including moving from bed to wheelchair. The nursing facility indicated that she should not be placed in a less restrictive residential setting until "she can demonstrate the ability to toilet herself."[3]

In regard to custody, Child lived with Mother until September 2018, when the court entered a shelter care order. Due to her hospitalizations Mother was unable to attend the shelter care hearing or the December 2018 dependency hearing at which the court adjudicated Child dependent and placed him in the legal and physical custody of Bucks County Children and Youth Social Services Agency ["CYS"]. Since November 2018, Child has resided with his foster mother who is a pediatric nurse. She and another pediatric nurse, "have expressed interest as an adoptive resource for him."[4] During her hospitalization, Mother has engaged in virtual visits with Child

---

[2] Tr. Ct. Op. at 8. The trial court found that Mother's "personal and medical stability became worse in 2018 when she tested positive for drug use and was repeatedly hospitalized for several very serious medical conditions[;]" her conditions include "Parkinson's Disease, Type 1 Diabetes, Depressive Episodes, Anxiety Disorder, Altered Mental Status, Chronic Pain Syndrome, Lack of Coordination, Muscle Weakness, Von Willebrand's Disease, and Incontinence." *Id.*

[3] *Id.* at 5.

[4] *Id.*

approximately twice a week, where Mother communicates with Child "by praying, singing, or playing the tambourine, and he responds by tapping or clapping his hands or by shaking his head."[5]

In April 2022, when Child was twelve and had been in foster care for over three years, CYS sought termination of Mother's parental rights.[6] On May 3, 2022, the court appointed a guardian *ad litem* ("GAL") to represent Child in the termination proceedings and to assess whether a conflict existed between the best interest and the legal interest of Child. In her subsequent motion, the GAL, who had served as Child's GAL since August 2018, averred that Child was "not capable of directing representation by expressing his objectives" due to his developmental delays.[7] Accordingly, the GAL asserted that there was no conflict of interest in representing both Child's best interest and legal interest. On May 24, 2022, the court appointed the GAL to represent Child's best interest and legal interest. A GAL also represented the best interest of Mother, while her counsel represented her legal interest.

The court presided over a hearing on October 19, 2022. Mother testified regarding, *inter alia*, her virtual visits with Child and her memories of caring for Child prior to 2018. Mother also claimed that she intended to leave the skilled nursing facility and to move with Child to Florida to live with her father.

---

[5] Tr. Ct. Op. at 11 (citing N.T., 10/19/22, at 52-53).

[6] CYS also sought termination of the parental rights of Child's biological father, who CYS has been unable to identify.

[7] Motion of the Appointment of Counsel, 5/5/22, at 2.

CYS presented the testimony of the unit manager at Mother's skilled nursing facility, the CYS supervisor responsible for Child's case, and Child's CYS caseworker. This testimony focused upon the medical conditions of Mother and Child, with limited discussion of Child's current living situation, other than that the home was appropriate. The testimony did not address Child's relationship or bond with Mother.

Following testimony, Mother's GAL argued that "it would be beyond [Mother's] physical capability and her best interest to be the primary or even a partial caretaker for him[,]" despite her "good attitude" and "optimism."[8] Child's GAL also opined that it was in Child's "best interest and legal interest that [Mother's] parental rights be terminated."[9]

On October 21, 2022, the trial court entered separate orders terminating Mother's and the biological father's parental rights to Child and awarding custody to CYS. The orders did not detail the grounds for termination under Section 2511, which the court subsequently set forth in its Pa.R.A.P. 1925(a) Opinion, opining that "clear and convincing evidence supported the decision to terminate Mother's parental rights under [Section] 2511(a)(5) and (a)(8)."[10] The court additionally found that Child's "future developmental,

---

[8] N.T. at 83.

[9] N.T. at 84.

[10] Tr. Ct. Op. at 9.

physical, medical and emotional needs are best served through the termination of her parental rights pursuant to subsection 2511(b)."[11]

On November 21, 2022, Mother's counsel filed a Notice of Appeal and a Statement of Intent to File an **Anders** Brief in Lieu of Statement of Errors Complained of on Appeal, pursuant to Pa.R.A.P. 1925(c)(4). On the same day, the trial court ordered Mother to file a Rule 1925(b) statement. Counsel complied, and the court filed a responsive Rule 1925(a) Opinion.[12]

In her counseled brief to this Court, Mother raises the following issue:

> Whether the lower court abused its discretion and erred as a matter of law by involuntarily terminating Mother's parental rights when the Agency failed to present clear and convincing evidence that termination would best serve[] the needs and welfare of the child in accordance with 23 Pa.C.S. § 2511(a)(5), (8) and § 2511(b).

Mother's Br. at 4.

## A.

"When reviewing a trial court's decision to grant or deny a termination of parental rights petition, an appellate court should apply an abuse of discretion standard, accepting the findings of fact and credibility determinations if they are supported by the record, and reversing only if the trial court made an error of law or abused its discretion." **In re D.C.D.**, 105 A.3d 662, 670–71 (Pa. 2014). We will find an abuse of discretion "only upon

---

[11] **Id.** at 11.

[12] Notwithstanding counsel's initial Statement of Intent to File an **Anders** Brief, counsel filed an advocate's brief with this Court on Mother's behalf.

demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id***. (citation omitted). We defer to the determination of the trial courts that "have first-hand observations of the parties spanning multiple hearings." ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

Parents have a fundamental right regarding the care, custody, and control of their children. ***See In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021). In light of this fundamental right, the party seeking termination of parental rights has the burden to "show by clear and convincing evidence that termination meets the needs and welfare of the children[.]" ***In re E.M.***, 620 A.2d 481, 485 (Pa. 1993).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights and requires a bifurcated analysis. First, the trial court must consider the grounds for termination under Section 2511(a), which focus "on the conduct of the parent." ***In re Adoption of A.C.***, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). In the instant case, the court found grounds for termination under Section 2511(a)(5) and (a)(8):

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(5), (8).

If the court finds grounds for termination under Section 2511(a), it then considers whether termination serves the needs and welfare of the child under to Section 2511(b):

**(b) Other considerations.** — The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

The "needs and welfare of the child" are requisite considerations for Section 2511(a)(5) and (8), as well as Section 2511(b). 23 Pa.C.S. § 2511(a)(5), (a)(8), (b); *see In re Adoption of R.J.S.*, 901 A.2d 502, 514 (Pa. Super. 2006) (addressing "needs and welfare" pursuant to Section 2511(a)(8) and (b)). The Supreme Court has long recognized that the evaluation of the needs and welfare of children requires consideration of the emotional bond between children and their parents and the effect on the child of severing the bond. *See In re E.M.*, 620 A.2d at 483 (reversing a

termination of parental rights where the trial court failed to consider the emotional bond between parent and child). However, "[n]othing in our case law dictates that the bond between a child and parent must predominate over all other needs and welfare considerations." *Interest of M.E.*, 283 A.3d 820, 839 (Pa. Super. 2022). "Instead, after ascertaining the nature and status of the bond and effect on the child of severing it, the [trial] court must weigh any pain from breaking the bond against other considerations as to what result serves the child's needs and welfare." *Id.* Nevertheless, where a trial court does not address the bond and the effect on the child of terminating the bond, this Court is constrained to reverse. *In re Termination of C.W.S.M.*, 839 A.2d 398, 404–05 (Pa. Super. 2003).

**B.**

Mother challenges the trial court's assessment of Child's needs and welfare under Subsections 2511(a)(5) and (8) and Subsection 2511(b), which she argues all require consideration of a child's bond with the parent. She asserts that the record in this case "is devoid of any evidence concerning the effect that termination will have on [the] bond" between Child and Mother. Mother's Br. at 13. After careful review, we find that the trial court failed to make a determination of the "needs and welfare" of Child because it did not consider whether severing Child's bond with Mother will be detrimental to Child, so we are constrained to reverse .

Specifically, we conclude that the record lacks evidence or analysis regarding whether Child has the capacity to form a bond with Mother, the

strength of such bond, and the effect that severance of the bond would have on Child. Indeed, the hearing transcript does not mention the term "bond" or "relationship," and none of the witnesses testified as to Child's relationship with Mother.

While the trial court opined that it was "clear to the [c]ourt that there is a connection between Mother and Child[,]" it did not address the potential effect of severance of the bond on Child. Tr. Ct. Op. at 11. Instead, the court opined that the relationship could continue following termination of Mother's parental rights:

> Although Mother has this remote communication bond with [Child] the Court found that the termination of Mother's parental rights would not destroy this relationship or prevent it from continuing in the future. Furthermore, the Court foresees no reason why the virtual visits cannot continue — which provide the opportunity for continued remote communication between Mother and Child while further ensuring [Child] receives the crucial 24/7 medical and physical care and stability he requires."

*Id.* This analysis fails to comply with our precedent requiring consideration of the extent of a bond between Child and Mother prior to the termination of parental rights. *See Interest of M.E.*, 283 A.3d at 836–37.

While the court may ultimately determine that any potential harm from terminating the bond between Child and Mother is outweighed by other aspects of Child's needs and welfare, it must first determine whether a bond exists and whether the Child would suffer harm due to severance of the bond in evaluating Child's needs and welfare under Subsection 2511(a)(5), (a)(8),

and (b) Accordingly, we reverse the decree terminating Mother's parental rights, but do so without prejudicing CYS's right to file another petition.

Decree reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2023