J-S06014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN RE: T.M.H., A MINOR | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>: |
| APPEAL OF: T.L.H., FATHER | :<br>:<br>:<br>:<br>:<br>:<br>: |
| | : No. 2522 EDA 2023 |

Appeal from the Decree Entered August 31, 2023
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2023-A0025

| | |
|---|---|
| IN RE: J.L.H.S., A MINOR | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>: |
| APPEAL OF: T.L.H., FATHER | :<br>:<br>:<br>:<br>:<br>: |
| | : No. 2523 EDA 2023 |

Appeal from the Decree Entered August 31, 2023
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2023-A0026

BEFORE:  DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED SEPTEMBER 26, 2024**

T.L.H. ("Father") appeals from the August 31, 2023 decree that involuntarily terminated his parental rights to his children, eight-year-old T.M.H. and six-year-old J.L.H.S (collectively "Children").[1]  Upon review, we affirm.

_____

[1] The trial court also terminated the parental rights of Children's mother, who is not a party to this appeal.

The relevant procedural and factual history is as follows. The Montgomery County Office of Children and Youth (the "Agency") became involved with the family in October of 2020 due to receiving a truancy referral for older siblings in the home. At that time, Children were living with J.S. ("Mother") and Father was uninvolved in Children's lives. The Agency implemented services in the home and worked with Mother for several months.

In July 2021, police arrested Mother for an outstanding bench warrant and the Agency obtained emergency custody of Children and placed them with their maternal grandmother. At the time, Father resided in Missouri—where he had been living for several years—and requested to be a placement resource for Children. The Agency submitted a request for a home study of Father's residence through the Interstate Compact for the Placement of Children ("ICPC"). On July 17, 2021, at Father's request, the Agency placed Children with their paternal grandmother and aunt pending Father's ICPC approval. On July 23, 2021, the trial court adjudicated Children dependent and ordered them to remain placed in kinship care. In March of 2022, paternal grandmother and aunt were no longer able to care for Children, who were moved to an Agency foster home. On June 15, 2022, after ICPC approval, the trial court transferred physical custody of Children to Father in Missouri.

Approximately three weeks later, on July 5, 2022, the Agency received a report from Father's paramour that she had kicked Father and Children out of their shared home due to Father's alcohol abuse and that Father was

currently driving to Pennsylvania to stay with Mother, who was court-ordered to have no unsupervised contact with Children. The Agency investigated the allegations, learned that police had intervened, and found Children at Mother's house without Father present. After implementing a safety plan and placing Children once again with their paternal grandmother and aunt, the Agency obtained emergency custody of Children and placed them in a temporary foster home.

The Agency developed Family Service Plan goals for Father, which included maintaining contact with Children and the Agency, obtaining suitable housing and financial stability, participating in a drug and alcohol evaluation and following all recommendations, maintaining sobriety and avoid consuming alcohol that could cause unsafe conditions for Father or Children, and avoiding police contact for anything associated with drug/alcohol abuse. The Agency contacted Father five times to attempt to set up visitation with Children; Father responded once and then failed to attend the virtual visitation that the Agency arranged. From September of 2022 through March of 2023, Father failed to maintain contact with the Agency or visit Children.

In March of 2023, the Agency placed Children in a pre-adoptive foster home with their three older siblings. In April 2023, Father began virtual visitation with Children, but he has had no in-person visits since Children were removed from his care in July 2022. Father failed to obtain a drug and alcohol evaluation, demonstrate housing stability, or provide the Agency proof of financial stability.

On March 3, 2023, the Agency filed petitions to involuntarily terminate Father's parental rights to Children. The trial court appointed legal counsel for Children and held a hearing. On August 30, 2023, the trial court involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2) (8) and (b).

Father timely appealed. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues for our review:

1. The trial court erred in finding clear and convincing evidence to terminate [] Father's parental rights under 23 Pa.C.S. § 2511(a)(1).

2. The trial court erred in finding clear and convincing evidence to terminate Birth Father's parental rights under 23 Pa.C.S. § 2511(a)(2).

3. The trial court erred in finding clear and convincing evidence to terminate [] Father's parental rights under 23 Pa.C.S. § 2511(a)(8).

4. The trial court erred in finding clear and convincing evidence to terminate [] Father's parental rights under 23 Pa.C.S. § 2511(b).

Father's Br. at 8 (unpaginated) (some punctuation added).

**A.**

In cases involving the involuntary termination of parental rights, this Court's review is limited to determining whether the trial court's conclusion is supported by competent evidence. *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). When we review a trial court's decision to grant or deny a

petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." **Id.** (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted).

We may not reverse merely because the record could support a different result. **T.S.M.**, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." **Id.** Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **In re M.G.**, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

It is axiomatic that "[p]arents enjoy a fundamental right to make decisions regarding the care, custody[,] and control of their children. It cannot be denied that significant and permanent consequences for both the parent and child can follow the termination of parental rights, as there is an undeniable importance in a child's relationship with a biological parent." **L.A.K.**, 265 A.3d at 591 (internal citations omitted). Accordingly, "[i]n recognition of the gravity attendant to the termination of parental rights, the

moving party must establish the statutory grounds by clear and convincing evidence; that is, evidence that is so clear, direct, weighty and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* at 592 (citations and quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). As discussed above, "[t]he party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted). Notably, we need only agree with the court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). We concentrate our analysis on subsection 2511(a)(1).

Section 2511(a)(1) provides that the trial court may terminate parental rights if the petitioner establishes that "[t]he parent by conduct continuing for

a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights. *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001). Although the statute focuses on an analysis of the six months immediately preceding the filing of the petition, the court must consider the whole history of a given case and may consider a parent's inaction before the six-month statutory provision. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008).

Our Supreme Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> Parental duties are not defined in the Adoption Act, but our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life. Fortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

*L.A.K.*, 265 A.3d at 592 (internal citations and quotation marks omitted).

It is well-settled that "a parent's efforts are always considered in light of existing circumstances." *Id.* (citations and internal quotation marks

omitted).  "To that end, even where the evidence clearly establishes [that] a parent has failed to perform affirmative parental duties for a period in excess of six months as required by Section 2511(a)(1), the court must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of parental rights."  *Id.* at 593 (citations and internal quotation marks omitted).

Our Supreme Court has explained:

> Consideration of the totality of the circumstances includes evaluation of the following: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to Section 2511(b). . . . It is within this framework that a court determines whether a parent has faced barriers that prevented the parent from maintaining the parent-child relationship.  What constitutes a "barrier" in the context of a Section 2511(a)(1) analysis is a finding within the discretion of the trial court, and what may constitute a barrier necessarily will vary with the circumstances of each case.

*Id.*  Notably, "a parent's efforts to enforce his or her legal custody rights unquestionably establishes the affirmative performance of a positive parental duty[.]"  *Id.* at 594.  Finally, "with respect to any petition filed pursuant to subsection (a)(1) . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."  23 Pa.C.S. § 2511(b).

**B.**

In his first issue, Father avers that the trial court erred when it terminated his parental rights pursuant to Section 2511(a)(1). Father's Br. at 7 (unpaginated). In support of this assertion, Father argues, without any citation to the record or meaningful legal analysis, that he is gainfully employed, has appropriate housing in Missouri that has been approved by the ICPC, and has commenced virtual visitation with Children. *Id.* at 13-14 (unpaginated).

As an initial matter, our review of the record belies Father's claims that he has appropriate housing approved by the ICPC or that he has engaged in meaningful visitation with Children. First, the record reflects that Father's living situation has changed since the ICPC approval because Father no longer lives with his now-former paramour. Father testified that he currently lives on a farm in Missouri and does construction work at the farm to pay for rent. N.T. TPR Hearing, 8/30/23, at 58-59. When asked if there was room for Children to come live with him, Father responded: "At this point in time, no, but I am in process of looking for another place that's in – I've been working on that for the last month." *Id.* at 60.

Next, the record reflects that Father has not seen Children in person for over nine months. It is undisputed that Father has not had in-person visitation with Children, nor seen Children in person, since July 2022. Moreover, Father's virtual visitation with Children began in April 2023, one month after the Agency filed the petition to terminate Father's parental rights.

Notably, as stated above, the court should not consider Father's efforts "to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b). Accordingly, Father's efforts to look for appropriate housing the month before the termination hearing and his virtual visits with Children for the few months leading up to the termination hearing, both of which were commenced after the Agency filed a termination of parental rights petition, are unavailing.

Here, the trial court found that "for a period of at least six months prior to . . . March 2023, [F]ather failed to perform adequate parental duties with respect to [C]hildren." Trial Ct. Op., 10/9/23, at 7. The trial court further found that Father provided "no persuasive testimony" to explain his limited contact with Children. *Id.* at 8.

Our review of the record supports the trial court's findings. Father has never been Children's primary caretaker and they only lived with him for three weeks in the Summer of 2022. Father has not had any in-person contact with Children since July 2022, and most certainly has not provided them with the necessary love, protection, guidance and support that go hand in hand with performing adequate parental duties.

The record supports the trial court's findings, and we decline to reweigh the evidence. Accordingly, we find no abuse of discretion in the trial court's termination of Father's parental rights pursuant to Section 2511(a)(1).

**C.**

In his final issue, Father avers that the trial court erred when it terminated his parental rights pursuant to Section 2511(b).  Father's Br. at 8 (unpaginated).  Father failed to raise this issue in his Rule 1925(b) statement and, therefore, has failed to preserve it for our review.  *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [s]tatement . . . are waived."); Pa.R.A.P 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").  Accordingly, Father's challenge to Section 2511(b) is waived.[2]

### D.

In conclusion, the trial court did not abuse its discretion when it terminated Father's parental rights pursuant to Section 2511(a)(1). Moreover, Father's challenge to Section 2511(b) is waived.  In light of our disposition, we decline to address Father's remaining issues.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/26/2024

---

[2] Even if we did not find this issue to be waived, Father would not be entitled to relief.  Upon review, the record supports the trial court's finding that termination of Father's parental rights is in Children's best interest pursuant to 23 Pa.C.S. § 2511(b).  *See* Trial Ct. Op. at 11-13.